CROSSBRIDGE, INC., Appellee,

v.

SHANK, Director of Environmental Protection, Appellant.

[Cite as *Crossbridge, Inc. v. Shank* (1991), 74 Ohio App.3d 779.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–25.

Decided July 18, 1991.

*Arter & Hadden, Richard P. Fahey, John P. Gartland, Martin H. Lewis* and *R. Stacy Lane,* for appellee.

*Lee Fisher,* Attorney General, *E. Dennis Muchnicki, Athan A. Vinolus* and *Lori A. Massey,* for appellant.

BOWMAN, Presiding Judge.

This is an appeal by the Director of the Environmental Protection Agency, pursuant to R.C. 3745.06, from a decision of the Environmental Board of Review that vacated an order of the director revoking all permits to install a landfill and a 1990 solid waste facility operating license issued to appellee, Crossbridge, Inc. The director sets forth the following assignment of error:

"The Environmental Board of Review (hereinafter 'Board') erred in holding that Revised Code Section 3734.09, requiring a finding of an emergency, is applicable to a final action of the Director revoking a permit pursuant to R.C. Section 3734.42(E)."

The essential facts of this case are not in dispute. In 1984, the director issued a permit to install to Crossbridge, which began accepting waste at its landfill in 1988. Joseph Scugoza was the sole shareholder of Crossbridge as well as its treasurer. In late 1989, Crossbridge submitted an application to modify its permit to install and, as part of that application and as required by R.C. 3734.42, filed a disclosure statement which included, among other things, information pertaining to Crossbridge, its owners, officers and key employees, as well as a listing of convictions and judgments rendered against the company or designated officers and employees.

Based in part on information provided in the disclosure statement, the Attorney General conducted an investigation and prepared a report for the director which disclosed Scugoza had pled guilty to a felony in New Jersey in June 1983 and again in December 1989. In November 1990, the director issued a final order revoking Crossbridge's permit to install and its solid waste operating license and ordered the landfill closed immediately. Crossbridge appealed the director's final order to the board and moved for a stay of the director's order. The parties stipulated the following facts before the board:

"1. Prior to the Director of Environmental Protection issuing his November 2, 1990 Final Findings and Orders to Crossbridge Inc., there was not a proposed action, nor was a prior adjudication hearing conducted.

"2. On November 4, 1982, Joseph Scugoza and Holloway, Inc. pleaded guilty to conspiracy to violate the Monopolies Provisions of the Solid Waste Control Act, fourth degree, New Jersey statutes annotated, Section 48:13A–10A, and New Jersey statutes annotated, 40:13A–12A, and were sentenced on June 24, 1983.

"3. On December 12, 1989, Joseph Scugoza was found guilty of conspiracy to falsify records in violation of New Jersey statutes annotated, Section 2C:5–2, a crime of the fourth degree, equivalent to a felony of the fourth degree in Ohio, and was sentenced on May 3rd 1990."

Despite references to numerous other allegations or facts allegedly involving Scugoza or companies with which he is associated, the only facts before the board were those stipulated by the parties. Likewise, many references by the director in his brief to actions alleged to be those of Scugoza, or others investigating his activities either in New Jersey or Ohio, are not in the record and, for purposes of this appeal, will be disregarded.

The board held a hearing on the request for a stay, including evidence as to the impact of the closing of the landfill on the community. The board concluded in part:

"9. Under these circumstances, where no emergency existed nor was declared, the action of the Director issuing the final findings and order in this case immediately revoking the permits previously issued to Appellant, is not in accordance with law and the action should be vacated.

"10. The Board notes that the decision in this case deals solely with a limited legal issue of whether or not the Director can issue a valid final order revoking a permit without complying with the requirements of section 3734.09 of the Revised Code. Because of the narrow issue presented by this appeal we emphasize that we are not deciding the question of whether the substance of the order is lawful and reasonable. In the absence of a finding of emergency or evidence of the existence of an emergency, no final revocation order, such as the one issued in this case, can be effective until the permit holder has been given notice in writing and a reasonable period of time to make or take whatever actions may be necessary to correct or resolve the situation which has prompted the revocation as provided in section 3734.09 of the Revised Code."

The board specifically stated in its decision that it addressed only the legal issue of whether the director could revoke a license without compliance with R.C. 3734.09 and that its decision did not address the merits of the director's order, or whether the order was supported by sufficient evidence. Likewise, the only issue before this court is whether R.C. 3734.09 applies to revocations pursuant to R.C. 3734.42 and does not concern the issue of whether sufficient evidence was presented to support revocation of Crossbridge's permits or licenses.

R.C. 3745.05 sets forth the standard of review for the board when considering an appeal taken from an order of the director and provides:

"If, upon completion of the hearing, the board finds that the action appealed from was lawful and reasonable, it shall make a written order affirming the action[;] if the board finds that the action was unreasonable or unlawful, it shall make a written order vacating or modifying the action appealed from. Every order made by the board shall contain a written finding by the board of the facts upon which the order is based. Notice of the making of the order shall be given forthwith to each party to the appeal by mailing a certified copy thereof to each party by certified mail, with a statement of the time and method by which an appeal may be perfected."

In *Citizens Commt. v. Williams* (1977), 56 Ohio App.2d 61, 10 O.O.3d 91, 381 N.E.2d 661, this court held, at paragraph two of the syllabus:

"The Environmental Board of Review, initially, does not stand in the place of the Director of Environmental Protection in considering an appeal and may not substitute its judgment for that of the Director, but may consider only whether his actions were unreasonable or unlawful."

This court's scope of review of a decision of the board is set forth in R.C. 3745.06, which provides:

"The court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

In *Robinson v. Whitman* (1975), 47 Ohio App.2d 43, 52, 75 O.O.2d 462, 468, 352 N.E.2d 167, 173, this court stated:

"The appeal from an order of the environmental board of review to this court, however, departs from the ordinary pattern in that, be the order from a hearing de novo or one given on an appeal, R.C. 3745.06 provides the rule requiring this court to affirm the order if it is supported by reliable, probative and substantial evidence and is in accordance with law. If the evidence does not meet the prescribed tests, then another disposition of the order becomes necessary."

In 1988, the General Assembly passed Am.Sub.H.B. No. 592, which made substantial changes in Ohio's solid waste, hazardous waste and infectious waste laws. Enacted as part of that legislation were R.C. 3734.40 to 3734.47, pertaining to the qualifications of licensees for various types of landfills. In R.C. 3734.40, the policy of the state was set forth in part as follows:

"(D) That strict licensing standards will help ensure that members of the waste management industry in this state will continue to maintain standards of professionalism and responsibility;

"(E) That it therefore is vital to the interests of this state to prevent either direct or indirect entry into the operations of the off-site solid waste disposal and transfer and the off-site hazardous waste treatment, storage, and disposal, industries [or] persons who are not competent and reliable or who have pursued economic gains in an occupational manner or context violative of the criminal code or civil public policies of this state, and it is to the end of excluding such persons from those industries that the regulatory and investigatory powers and duties provided in sections 3734.41 to 3734.47 of the Revised Code shall be exercised to the fullest extent consistent with law."

Pursuant to this declaration of public policy, the Attorney General is required to make extensive background investigations of applicants and provide that information to the director. Upon review of the Attorney General's investigative report, R.C. 3734.42(E) provides:

" * * * The director shall review the disclosure statement and investigative report to determine whether the statement or report contains information that if submitted with a permit application would require a denial of the permit pursuant to section 3734.44 of the Revised Code. If the director determines that the statement or report contains such information, he *may revoke* any previously issued permit pursuant to section 3734.45 of the Revised Code, or he *shall deny* any application for a renewal of a permit or license. When the renewal of the license is being performed by a board of health, the director shall instruct the board of health about those circumstances under which the renewal is required to be denied by this section." (Emphasis added.)

R.C. 3734.44 sets forth conditions for renewal or issuance of licenses or permits and reasons for denying the licenses or permits. R.C. 3734.45 pertains to revocation of permits or licenses and provides:

"Any permit or license *may be revoked* by the director of environmental protection or board of health for any of the following causes, in addition to other causes for revocation authorized by this chapter[.]" (Emphasis added.)

R.C. 3734.46 provides a procedure for the removal of conditions which would preclude an applicant from otherwise being able to obtain a permit or license.

At the time Am.Sub.H.B. No. 592 was passed, R.C. 3734.09 provided in part:

" * * * The director may suspend, revoke, or deny a permit to operate any hazardous waste facility for violation of any section of this chapter or any rule adopted thereunder. No application for a permit or license to be issued under this chapter shall be denied, and no permit or license issued under this chapter shall be modified, suspended, or revoked, without a written order stating the findings upon which the denial, suspension, modification, or revocation is based. A copy of the order shall be sent to the applicant or permit or license holder by certified mail. Unless an emergency exists requiring immediate action to protect the public health or safety or the environment, no suspension, modification, or revocation of a permit shall be made effective until the permit holder has been given notice in writing and a reasonable period of time to make corrections."

In its decision, the board found that the director had failed to comply with R.C. 3734.09 by failing to give Crossbridge notice and that, therefore, his action was not in accordance with law.

The director argues that the board erred in finding R.C. 3734.09 applicable because the revocation of Crossbridge's permit was mandatory when Scugoza's ownership interest, position as a corporate officer, and past convictions were disclosed; that the intent of the legislature in enacting R.C. 3734.40 to 3734.47 was to exclude the application of R.C. 3734.09; and that no purpose would be accomplished by providing notice and a hearing and, to do so, would frustrate the stated intent of the legislature in passing Am.Sub.H.B. No. 592. We disagree.

It is presumed that the legislature was familiar with existing legislation when it passed Am.Sub.H.B. No. 592, and laws passed by the legislature are presumed to harmonize with existing statutes on the same subject. *State v. Ferguson* (1954), 96 Ohio App. 297, 54 O.O. 310, 121 N.E.2d 684; *In re Application of Latham* (1965), 5 Ohio App.2d 187, 34 O.O.2d 316, 214 N.E.2d 681; and *Sentinel Sec. Systems v. Medkeff* (1987), 36 Ohio App.3d 86, 521 N.E.2d 7. Thus, we must presume that, when it enacted Am.Sub.H.B. No. 592, the legislature was aware of the language in R.C. 3734.09 that prohibited revocation of a license for *any* violation of R.C. Chapter 3734 without a written order provided to the license holder setting forth the basis for the revocation and, in the absence of an emergency, permitting the license holder to make corrections. Inasmuch as none of the language in R.C. 3734.40 to 3734.47 excludes either directly or by implication application of the requirements of R.C. 3734.09, we must presume the legislature intended it to apply.

Appellant argues that the rule of *in pari materia* and *State v. Fremont* (1949), 151 Ohio St. 19, 26, 38 O.O. 506, 509, 84 N.E.2d 498, 503, are dispositive, relying on the following language:

" ' * * * Courts have also refused to invoke the rule for the purpose of reading into a later act whole sections of former acts when there was no intimation of such an intent on the part of the legislature.' "

The language relied on is taken out of context of both the court's decision and the facts of the case. In *Fremont*, the state prosecuted a lodge, an unincorporated association, for advertising a lottery involving the sale of tickets and awarding of prizes. One of the issues before the court in *Fremont* was whether G.C. 13067, which prohibited the advertising of a lottery, could be read *in pari materia* with later amendments to G.C. 13063 and 13064, which prohibited the sale of lottery tickets or promotion of a lottery only if the lottery was for the defendant's own profit. In discussing application of the *in pari materia* rule, the court stated, at 26–27, 38 O.O. at 509–510, 84 N.E.2d at 503:

" 'The rule *in pari materia* is, of course, applicable only when the terms of the statute to be construed are ambiguous or its significance is doubtful. It is

not to be applied to effect a construction contrary to the clearly manifested intent of the legislature. Courts have also refused to invoke the rule for the purpose of reading into a later act whole sections of former acts when there was no intimation of such an intent on the part of the legislature.'

"Section 13067, General Code, is clear and unambiguous. Its significance is not doubtful. The General Assembly has nowhere indicated an intent to add the exceptions in Sections 13063 and 13064, General Code, to Section 13067, General Code. Section 13067, General Code, has been the law of this state for many years and is consistent with the constitutional provision (Section 6, Article XV) prohibiting lotteries. * * * *"

In *Bernardini v. Board of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 2–3, 387 N.E.2d 1222, 1224, the court stated:

"When this court has been called upon to give effect to an Act of the General Assembly, a standard of judicial restraint has developed when the wording of the enactment is clear and unambiguous. For example, a statute that is free from ambiguity and doubt is not subject to judicial modification under the guise of interpretation. * * * In ascertaining the legislative intent of a statute, 'It is the duty of this court to give effect to the *words used* [in a statute], not to delete words used *or to insert words not used.*' (Emphasis added.) * * * Furthermore, whether an act is wise or unwise is a question for the General Assembly and not this court. * * * *"

The language of R.C. 3734.09 is clear and unambiguous and applies to *any* revocation pursuant to R.C. Chapter 3734 and, thus, we must not rely on rules of statutory construction to read into or delete from the statute language that is not there or was not intended.

Further, appellant argues that, given the mandatory nature of the revocation provisions in R.C. 3734.40 through 3734.47, there would be no purpose in giving notice or providing the applicant an opportunity to make corrections. Appellant relies in large part on the language in R.C. 3734.44(C) which provides:

" * * * If any such individual or business concern was convicted of any of the offenses so enumerated that are felonies, a permit shall be denied unless in the case of an individual five years have elapsed since the individual was fully discharged from imprisonment, probation, and parole for the offense. In determining whether an applicant has affirmatively demonstrated rehabilitation, the director, the hazardous waste facility board, or the board of health shall request a recommendation thereon from the attorney general and shall consider and base the determination on the following factors[.]"

Thus, appellant argues that, inasmuch as Scugoza was convicted of an offense in 1989, five years have not elapsed and, therefore, revocation of Crossbridge's license is mandatory. At the outset, we note that R.C. 3734.44 pertains only to the issuance or denial of permits and licenses and is not applicable to a revocation, the issue presented by this appeal, which is addressed in R.C. 3734.45.

Further, we disagree revocation under all circumstances is mandatory and not discretionary with the director. As set forth in R.C. 3734.42(E) and 3734.45, *supra*, which pertain specifically to the revocation, as opposed to the issuance, of licenses, the statutes provide the director *may* revoke a license. This language is to be contrasted with the provisions in R.C. 3734.42(E) and 3734.44 which state the director *shall* deny applications for renewal or requests for issuance of a license under certain defined circumstances.

In *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, the court held, at paragraph one of the syllabus:

"In statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage."

The court further stated, at 107–108, 56 O.O.2d at 60–61, 271 N.E.2d at 837–838:

"The character of a statute, as mandatory or permissive, is commonly determined by the manner in which particular terms used therein are construed.

"In determining whether a statute is mandatory or permissive, it is often necessary, as in this case, to trace its use of the terms 'may' and 'shall.'

"The statutory use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *, at least where there is nothing in the language or in the sense or policy of the provision to require an unusual interpretation * * *.

"The word 'shall' is usually interpreted to make the provision in which it is contained mandatory * * *, especially if frequently repeated * * *.

"Ordinarily, the words 'shall' and 'may,' when used in statutes, are not used interchangeably or synonymously. * * *

"However, in order to serve the basic aim of construction of a statute—to arrive at and give effect to the intent of the General Assembly—it is sometimes necessary to give to the words 'may' and 'shall' as used in a statute, meanings different from those given them in ordinary usage * * *, and one may be construed to have the meaning of the other * * *.

"But when this construction is necessary, the intention of the General Assembly that they shall be so construed must clearly appear * * * from a general view of the statute under consideration * * *, as where the manifest sense and intent of the statute require the one to be substituted for the other * * *."

In enacting the provisions of R.C. 3734.40 through 3734.47, the legislature consciously and deliberately used "may" and "shall" in relation to different actions to be taken by the director. "Shall" is used in conjunction with the issuance or denial of a license or a permit; "may" is used in conjunction with revocation. This indicates a clear intent on the part of the legislature that one action is mandatory and the other is discretionary. Thus, there may be situations where the revocation of a permit or license to operate a landfill could have such an impact on a community that the director might find those circumstances outweigh the benefit to be gained from denying an individual who would otherwise be disqualified from the opportunity to do business in Ohio.

Appellant further argues no purpose is to be accomplished by providing notice and an opportunity for corrections to be made by the applicant. Appellant argues that, since revocations are essentially based on conduct of an applicant or one of its owners or an owner, officer or key employee, such action cannot be undone and, unless a period of years passes, there is nothing an applicant could do to correct the pre-existing situation.

The notice required by R.C. 3734.09 would provide an applicant an opportunity to contest the accuracy of the Attorney General's investigative report. Here, appellant's two convictions were stipulated by the parties, but this may not always be so. Elementary basic concepts of due process would require providing a party an opportunity to refute what could be inaccurate information before taking away a license to do business. Further, R.C. 3734.46, while pertaining to the issuance and renewal of licenses, provides an opportunity for the applicant to take some steps to sever relationships with the individual that would otherwise cause the applicant to be disqualified. This would appear to indicate the legislative intent that, even given the mandatory nature of the provisions pertaining to issuances of licenses in the first instance, some opportunity exists to correct an otherwise disqualifying circumstance. Where revocation is discretionary, the same opportunity should be available. Here, for example, the applicant is Crossbridge, a corporation, and not Skugoza, and Crossbridge could sever its ties with the disqualified officer or employee.

Last, appellant argues that application of R.C. 3734.09 would frustrate the intent and purpose of the legislature in enacting Am.Sub.H.B. No. 592. However, R.C. 3734.09 merely provides that those individuals already holding

licenses and permits and presumably already in business with the opportunity to know why the license is to be revoked and to take some action, if possible, to correct the situation or challenge the accuracy of the information that is the basis for the revocation. Nothing in this process would prevent the director from revoking the license in an appropriate situation. Appellant's assignment of error is overruled.

Appellee filed a notice of appeal, which was later voluntarily dismissed, and has set forth a cross-assignment of error only to prevent reversal. Inasmuch as we find no error in the decision of the board, we need not address the cross-assignment of error.

For the foregoing reasons, appellant's assignment of error is overruled and the decision of the Environmental Board of Review is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.