ROBINSON, APPELLANT, *v.* WHITMAN, DIRECTOR, APPELLEE.

[Cite as Robinson v. Whitman (1975), 47 Ohio App. 2d 43.]

(No. 74AP-447—Decided January 28, 1975.)

*Mr. Stanley U. Robinson, Jr.,* pro se.

*Mr. William J. Brown,* attorney general, and *Mr. Richard P. Fahey,* for appellee.

TROOP, J. This appeal is from the order of the environmental board of review, journalized September 4, 1974. The order reads:

"The board hereby grants the motion of the director to dismiss and order that the director's order of July 16, 1974 be found to be lawful and reasonable and the same is hereby affirmed."

Stanley U. Robinson, Jr., filed a complaint April 27, 1973, and an "amended verified complaint," March 21, 1974, with the Ohio environmental protection agency, Ira L. Whitman, director, in which it is averred that odors from the plant of Anheuser-Busch, Inc., have continued unabated from April of 1973 through March 20, 1974, according to the calendar notations attached to the amended complaint, "of sufficient strength to cause affiant's wife, Louise T. Robinson, to become 'sick at her stomach.' "

The complaint appears to have been predicated upon the provisions of R. C. 3745.08. The pertinent portion reads as follows:

"*  *  *  [A]ny person aggrieved or adversely affected by an alleged violation may file a verified complaint, in writing, with the director of environmental protection alleging that another person is violating or threatens to violate any law, rule, or standard, any order relating to air pollution, water pollution, or solid waste disposal, that the person is violating or threatens to violate the conditions of such license, permit, or variance."

As is indicated by the allegations of the complaint, and shown at many points in the record before this court, Anheuser-Busch is operating its plant presently at less than complete compliance with agency regulations establishing standards controlling air pollution. Two "variances" were granted to the company, PO11 and PO12, with special conditions attached to PO11. The complainant Robinson, makes a special point of condition number 7 of his complaint, which he quotes as follows:

"Anheuser-Busch shall diligently and actively investigate and pursue the development and implementation of interim measures to allieviate (sic) and abate emissions of odorous substances. Such efforts should include—but not be limited to—the following measures, either singly or in combination:

"1. minimize the spent (wet) grain throughput volume of the dryer by:

"(a) use of alternate means of environmentally acceptable disposal of all or a portion of the spent grain;

"(b) development of a market for all or a portion of the spent grain * * *."

That these conditions provide the focal point for complainant's attack is indicated by the closing paragraphs of the complaint, as follows:

"Affiant states that Anheuser-Busch, Inc., has violated the special terms and conditions attached to the variance granted to it. Anheuser-Busch, Inc., has used or attempted to use alternate means of environmentally acceptable disposal of all or a portion of the spent grain. Neither has Anheuser-Busch, Inc., attempted to dewater the spent grain prior to entering the dryer.

"By reason of these factors, the variance previously granted Anheuser-Busch, Inc., should be immediately revoked, and Anheuser-Busch, Inc., should be ordered to cease and desist immediately from further pollution of the atmosphere."

R. C. 3745.08 prescribes the necessary response by the director upon the receipt of such a complaint. It states:

"Upon receipt of the complaint, the director shall cause a prompt, thorough investigation to be conducted. If, upon completion of the investigation, there is not probable cause to believe that a violation has occurred or will occur, the director shall, by order, dismiss the complaint."

The record indicates that the director did make the investigation as required, and under date of June 21, 1974, addressed a communication to Mr. Robinson outlining the steps taken in the investigation, and containing an order, as follows:

"Anheuser-Busch has been issued a variance from Regulations EP-10-07 and EP-11-08 and is complying with both the terms and special conditions of the variance. Our engineering staff has concluded, 'the above results of the investigation prove that Anheuser-Busch is exploring both long-term and immediate solutions to their odor problems.' Consequently, there is no probable cause to believe a violation of the law has occurred or will occur. Therefore, I order that the verified complaint be dismissed effective immediately."

The director advised the complainant of a right to appeal under R. C. 3745.04. This particular section of the environmental protection legislation is no end perplexing. It has troubled this court from the outset, and most assuredly must have been equally vexatious to the director and the board of review, and continues to be so at the moment. The very troublesome language, the portions being interrelated, is noted:

"As used in this section, 'any person' means any individual * * * whether or not the individual or legal entity is an applicant for or holder of a license, permit, or variance from the environmental protection agency.

"As used in this section, 'action' or 'act' includes the adoption, modification, or repeal of a regulation or standard, the issuance, modification, or revocation of any lawful order * * * and the issuance, denial, modification, or revocation of a * * * variance * * *.

"Any person who was a party to a proceeding before the director may participate in an appeal to the environmental board of review for an order vacating or modifying the action of the director of environmental protection * * *."

The quoted portions indicate that a "person" who was a party to a proceeding before the director may participate in an appeal seeking an order vacating or modifying the "action" of the director, "action" being defined as "the issuance, denial, modification, or revocation of a * * * variance * * *." It is submitted that in the instant case the director did not issue an order of "denial, modification, or revocation of a * * *" variance but, simply, by his order, allowed the issued and existing variances granted to Anheuser-Busch to stand as they presently are.

That the authority of the director of environmental protection respecting variances is broad must not be overlooked. R. C. 3704.03 outlines the powers of the director; i. e., to develop programs for the prevention, control, and abatement of air pollution, to conduct studies, investigations and research, prescribe standards, and make regulations to accomplish the basic purposes of the act.

Specifically, paragraph (H) empowers the director to "Issue, revoke, modify, or deny variances from his regulations, including variances for emissions in excess of the applicable emission standards."

In paragraph (D) there is a direction as to the making of regulations which states: "* * * the director shall hear and give consideration to evidence relating to * * *."

Then four paragraphs follow which list the evidence to be considered, the first of which is worthy of note. It reads: "[consideration may be given relating to the] character and degree of any injury to human health or welfare, plant or animal life, or property, or any unreasonable interference with the comfortable enjoyment of life or property as the result of air pollution * * *."

Paragraph (H) is likewise specific as to what is necessary to be considered in the issuance of variances. It reads as follows:

"No variance shall be issued, revoked, modified, or denied until the *director* has considered the relative interests of the applicant, other persons and property affected by the discharge, and the general public. Any variance granted pursuant to this section shall be for a period specified by the *director* and may be renewed from time to time on such terms and for such periods, not to exceed one year each, as the *director* determines to be appropriate."

There are additional provisions relating to variances contained in R. C. 3704.04, which states that the

"* * * issuance, revocation, modification, and denial of permits and variances under Chapter 3704. of the Revised Code shall be in accordance with sections 119.01 to 119.13, Chapter 3745, and division (H) of section 3704.03 of the Revised Code."

In matters of variance then, procedures from the beginning to a result ending in an appeal, under R. C. Chapter 3704, are controlled by those legislative pronouncements noted. The matter of appeal is the focal point of this review. As to an appeal, from a proceeding under R. C. Chapter 3704, the important facits of which are noted herein, it is necessary to look to the administrative procedure act, R. C. 119.01 through 119.12, and R. C. Chapter 3745. R. C. 3704.03 (H) supplies direction as to hearings and other procedural steps. R. C. 3745.04 provides for an appeal to the environmental board of review. That section, noted *ante,* gives any person, a party to a proceeding before the director, an opportunity to "participate" in an appeal for an order "vacating or modifying" the "action" of the director, an "action" being defined as the "issuance, denial, modification, or revocation of a * * * variance."

It is difficult to find the order of the director in this case to be an "action" when the order issued refused to revoke the variance issued to Anheuser-Busch as was sought by the complaint filed by Robinson. The environmental board of review apparently avoided facing any objection because the appeal lacked the color of an "action" by issuing

"an order making it a de novo hearing on July 17, 1974." This action is obviously predicated therefore upon the provision in R. C. 3745.04, which reads:

"* * * The environmental board of review has exclusive original jurisdiction over any matter which may, under this section, be brought before it."

The necessary observation that follows this ruling is that under R. C. 3745.04, dealing with procedures involving the permitting and handling of complaints, there is no hint that a right of appeal is available to a citizen who merely complains.

It is noteworthy also that the board believed that there had been no adjudication hearing since EP-40-03 (C) states that an adjudication hearing. "* * * shall mean an adversary proceeding at which are determined rights, duties, privileges, benefits or legal relationships of a specified person."

If the complaining citizen in this case is indeed "a specified person," and a member of that select group of persons entitled to notice by qualifying under the provisions of R. C. 3745.07, he must, in order to secure an adjudicative hearing as to his objection, file a timely request for such hearing according to the requirements of EP-40-13.

Such being the case, the only two parties to "the appeal," which is now an action in a trial de novo, are Stanley U. Robinson, Jr., the plaintiff, and the defendant, the director of environmental protection, the necessary result of which is that Anheuser-Busch is not a party.

The appeal to this court is by virtue of R. C. 3745.06 which provides: "Any party adversely affected by an order of the environmental board of review may appeal to the court of appeals of Franklin county * * *."

Further significant provisions of that section read:

"In hearing the appeal, the court is confined to the record as certified to it by the board. The court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the board. * * *

"The court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

The court in this instance conducted the customary oral hearing in accordance with applicable rules, and moves now to an examination of the record certified to this court, as required, by the environmental board of review.

The findings of fact and final order of the board, entered in its journal September 23, 1974, in case No. EBR 74-28, is quite comprehensive and complete. No attempt is made to summarize or quote it in detail. Attention is directed only to what would seem to be the substance of the conclusions reached by the board.

It is emphasized again that R. C. 3745.08 provides the offended citizen a right to complain, but requires only that in response thereto the director "shall cause a prompt, thorough investigation to be conducted" to determine if there be probable cause to believe that the source of the offense violated the terms of the variance under which it is operating.

The order of the board, beginning at page nine, sets out in detail the violations claimed in the complaint filed by Mr. Robinson. The board indicates its feeling that there may be some doubt as to the interpretation of the variances, but nonetheless accepts the requirements as claimed. A complete statement appears in the order, at page nine, the introductory paragraph of which reads as follows:

"* * * Anheuser-Busch shall diligently and actively investigate and pursue the development and implementation of interim measures to allievate (sic) and abate emissions of odorous substances. Such efforts should include—but not be limited to—the following measures, either singly or in combination:"

Subtopics follow, numbered 1 and 2, with accompanying related detail:

"1. Minimize the spent (wet) grain throughput volume of the dryer by:

"(a) Use of alternate means of environmentally acceptable disposal of all or a portion of the spent grain;

"(b) Development of a market for all or a portion of the spent grain;

"(c) Dewatering of the spent grain prior to entering the dryer;

"(d) Other process changes or modifications as may be appropriate and productive of desired odor reduction results.

"2. Utilize odor destruction techniques, such as—

"(a) Incineration by re-circulation of dryer exhaust or by afterburner;

"(b) Ozonation;

"(c) Chemical additives to existing scrubber solution;

"(d) Other odor control technology as may be appropriate and productive of desired odor reduction results."

The board indicates certain allegations contained in the complaint as to the offensive odor, as follows:

"The verified complaint of March 21, 1974, further alleges that odor from the plant appears to be stronger and longer at night and on the weekends, contains an article pertaining to respiratory disease, and alleges that Anheuser-Busch, Inc., has violated the special terms of the variance by its failure to use or attempt to use alternative means of environmentally acceptable disposal of its spent wet grain and by not attempting to dewater the spent grain entering the dryer."

The board noted that the director responded to the complaint and did in fact make a prompt and thorough investigation. A check of that portion of the record containing the record of proceedings before the director, including a detailed report of his investigation, would support the conclusion reached by the board.

Perhaps the board was influenced in its conclusion by a finding of the director which it notes as follows:

"Good faith efforts had to be made by the entity to reduce emissions. Our engineering staff reports that Anheuser-Busch has been very cooperative with the agency and is making a good-faith effort to solve the problem."

Findings of the board are summarized and Anheuser-Busch was found to have met the compliance time schedule, and pursued the development of interim measures to meet the air pollution problem. The findings clearly indicate the technical and economic problems facing the offending Anheuser-Busch plant and leave no doubt as to the almost impossible technical task which confronts any complainant who would attempt to prove noncompliance as to various requirements by the creator of objectionable emissions from the plant's stacks.

By way of summary, only two of the findings of the board are quoted, as follows:

"6 There is no reliable, probative or substantial evidence to show the odor emitted from the Anheuser-Busch plant has increased or decreased.

"7 The variance issued to Anheuser-Busch for its spent grain drying dryers does not require compliance with AP-2-07 until July 1, 1975."

The plaintiff-complainant before the environmental board of review, appellant herein, bottoms his appeal to this court on 17 assignments of error, according to the notice of appeal filed with the board and in this court. The brief of the appellant shows assignments of error lettered A through I, the nine claimed errors resulting from combinations of those as numbered in the notice of appeal.

The finding of this court that there was a de novo hearing before the board means an action in which Robinson was the plaintiff and the director the defendant, which of necessity means that Anheuser-Busch was not a party, which conclusion disposes specifically of assignments of error A and B. The claimed legal deficiencies—to-wit, omitted journalizations—claimed by the appellant might constitute error, but they were corrected, though tardily, and, therefore, cannot be regarded as prejudicial. Assignment of error I is not well taken.

The claim that the board erred in not permitting the appellant to raise the issue of a total disregard, by the director, of required procedures in his issuance of variances, is not well taken at this point of time since there is ample provision for the challenging of the issuance, modification, or renewal of the variance contained in R. C. 3704.-04 and 3704.03. Assignment of error H is not well taken.

The nub of the errors assigned is found in assignment of error G—the board erred in holding that there was no probable cause to find that Anheuser-Busch violated the terms of the variances. The remaining assignments of error are directed to matters of evidence—that errors occurred as to the admission or rejection of evidence that would prove the error assigned in G.

Weight and credibility of evidence is for the trial court —the environmental board of review in this case. Evidence is troublesome in this case. Illustrative is the refusal of the board, assignment of error H, to admit evidence from many witnesses that the stench emitted from the Anheuser-Busch plant remained the same since the issuance of the variances. Assuming the infallibility of the human nose to record accurately changes in smells, the question still remains: Is the condition due to the failure of Anheuser-Busch to do anything about the offending odors, or does it mean that the company, up to this point, has failed to locate the effective technical control even though its efforts were honest and conscientious? Certainly, the news release issued by the environmental protection agency at the time of the issuance of the variance would contribute nothing by way of answer to the basic questions presented to the board.

The appeal from an order of the environmental board of review to this court, however, departs from the ordinary pattern in that, be the order from a hearing de novo or one given on an appeal, R. C. 3745.06 provides the rule requiring this court to affirm the order if it is supported by reliable, probative and substantial evidence and is in accordance with law. If the evidence does not meet the pre-

scribed tests, then another disposition of the order becomes necessary.

Broad powers are granted the director of the environmental protection agency. These broad authorizations require a consideration by the board in its review of the action taken by the director, and by this court, for that matter, in reviewing the evidence before the board upon which its order was predicated. Variances, issued under R. C. 3704.03(F), (G) or (H), are items of concern in R. C. 3704.-031 which outlines what the director may prescribe before the issuance of a variance. The section states:

"* * * [The director] may require the applicant to install such equipment and conduct such tests as the director finds necessary to determine adequately the amount and content of any emissions from such sources and any violation or potential violation of sections 3704.01 to 3704.11 of the Revised Code, or the regulations or orders promulgated thereunder."

The variances granted Anheuser-Busch require the use of equipment and the conducting of tests. The objective named is to "determine adequately" the "amount and content of any emission" from the Anheuser-Busch plant.

Significantly, the section closes, as follows:

"* * * In requiring equipment and tests the director shall give consideration to technical feasibility and economic reasonableness, and allow reasonable time for compliance."

In the instant case, July 1, 1975, is the date for necessary compliance, These factors must be considered in appraising the quality of the director's present investigation as done in response to the complaint of Stanley U. Robinson, Jr.

Reduced to simpler terms, the question presented is: Was the wrongdoing of Anheuser-Busch, the claimed violation of the terms of the variances granted, sufficiently established by reliable, probative and substantial evidence and according to law? The director met the requirements of the law in responding promptly and by inaugurating an investigation when faced with the complaint. The environmental board of review sustained the order of the director,

and its order is here for review and this court must apply the tests required in R. C. 119.12, as above noted.

Ordinary meaning attaches to the terms reliable, probative, and substantial, that is, dependable, more than superficial or speculative, and having substance or body, giving it weight and quality which entitles it to credence. A tremendous burden of proof rested upon this complainant, faced with, in practical fact, a two-fold burden, to prove wrongdoing by Anheuser-Busch, and wrongdoing on the part of the director.

An examination of the record supplied by the director, and by the board of review makes necessary the conclusion that the order of the environmental board of review is supported by reliable, probative and substantial evidence and is in accordance with law.

The assignments of error are not will taken and the order of the environmental board of review is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.