**CECOS INTERNATIONAL, INC., Appellant and ·Cross–Appellee,**

v.

**SHANK, Dir., Appellee;**

**Clermont County Board of Commissioners, Appellee and Cross–Appellant.**

[Cite as *CECOS Internatl., Inc. v. Shank* (1992), 79 Ohio App.3d 1.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–599.

Decided March 24, 1992.

2

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■

---

*Bricker & Eckler, Charles H. Waterman III* and *Kirk N. Guy,* for appellant and cross-appellee.

*Lee Fisher,* Attorney General, *Beverly Y. Pfeiffer* and *Lauren C. Angell,* Assistant Attorneys General, for appellee.

*Samuels & Northrop Co., L.P.A., Stephen P. Samuels* and *Renee J. Houser,* for appellee and cross-appellant.

---

WHITESIDE, Judge.

CECOS International, Inc. ("CECOS") appeals the order of the Environmental Board of Review ("EBR") affirming a determination by the Director of the Environmental Protection Agency ("EPA") which issued a National Pollutant Discharge Elimination System ("NPDES") permit to CECOS. Appellant CECOS raises the following two assignments of error:

1. "The Environmental Board of Review erred in failing to make written findings of fact, as required by R.C. 3745.05, upon which the board based its conclusion that the director acted lawfully and reasonably in issuing a National Pollutant Discharge Elimination System Permit requiring approval by and notice to the Ohio Environmental Protection Agency before CECOS International, Inc. can discharge water under the permit."

2. "The board erred in finding that the director acted lawfully and reasonably in issuing a NPDES permit requiring approval by the Ohio EPA and notice to the Ohio EPA before CECOS can discharge water under the permit."

The Board of Commissioners of Clermont County ("Clermont County") likewise appeals the order of the EBR and raises the following three assignments of error:

1. "The Environmental Board of Review erred in affirming the issuance of an NPDES permit to CECOS International, Inc., in the absence of a sufficient demonstration by the applicant that the discharge will comply with the permit terms."

2. "The Environmental Board of Review erred in affirming the permit in the absence of a requirement to notify downstream users prior to discharges."

3. "The Environmental Board of Review erred in affirming the permit which allowed CECOS to submit significant monitoring and waste management plans after the permit issuance."

Appellant CECOS is the owner and operator of a hazardous waste storage, treatment, and disposal facility located in Clermont County, Ohio. On November 26, 1984, prior to the issuance of the subject NPDES permit, the director ordered CECOS to develop a surface water management plan ("SWMP") capable of separating waste handling areas from all other areas at the facility and to install measures to ensure that water that may have encountered hazardous waste would not contact uncontaminated water.

In May 1988, CECOS applied for an NPDES permit[1] in order to discharge into the East Branch of Pleasant Run Creek ("East Branch") hazardous waste facility. The East Branch flows into the East Fork of the Little Miami River, which has located upon it eight miles downstream the drinking water supply intake for the city of Williamsburg. An NPDES permit allows for discharge of pollutants in compliance with authorized discharge levels or includes a schedule which will bring the point source into compliance with authorized discharge levels. Ohio Adm.Code 3745-33-01(Q). A "point source," in essence, is the location or source of the discharge. The Ohio Adm.Code 3745-33-01(S) defines "point source" more precisely:

" 'Point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

CECOS isolated three types of water at the facility: (1) contaminated water, (2) uncontaminated water, and (3) potentially contaminated ("PC") water. CECOS applied for the subject permit in order to dispose of the third category of water, the PC water. The PC water is rainwater that potentially has been isolated into PC ponds for separate discharge.

The PC area at the facility consists of a sewer and drainage system that collects the rainwater into basins known as PC ponds. CECOS has two PC ponds, with a capacity of approximately 1.8 and 1.86 million gallons, respectively. Each pond was designed to hold the amount of rainwater generated by a twenty-four-hour storm that could occur once every twenty-five-year period.

---

1. At the same time it applied for the NPDES permit, CECOS applied for a permit to install ("PTI") a system for collecting, treating, and discharging potentially contaminated water. As a condition in the permit, the director required CECOS to complete and submit a PTI application with "as built" drawings, detailed plans for the holding ponds, and any treatment facilities "necessary to achieve the final effluent limitations of the permit."

CECOS has closed its facility and no longer accepts hazardous waste for disposal. While no new hazardous wastes are being disposed of at CECOS, the need for the isolation and discharge of PC water remains.

The director issued to CECOS the NPDES permit authorizing the discharge of PC water under several conditions. First, CECOS must conduct extensive analysis and testing of the PC water to be discharged and notify the director of its intent to discharge. Second, the director must give CECOS written approval before CECOS has authority to discharge the PC water. Third, CECOS must submit a bioaccumulation monitoring plan ("BMP") to be approved by the director within three months of the effective date of the permit. Finally, CECOS must submit an application for a Permit to Install ("PTI") within four months of the effective date of the permit.

The "prior notice" condition in Part II(E) of the permit provides:

"The permittee shall inform the Ohio EPA, Division of Public Drinking Water, Southwest District Office, of its intent to discharge before commencing discharge."

The "prior approval" condition in Part II(G) of the permit provides:

"Prior to any discharge into the East Branch of Pleasant Run Creek from the CECOS Storage Facilities, CECOS must submit bioassay and chemical analytical results to the Ohio EPA and await written approval to discharge."

The BMP condition in Part II(F) of the permit was considered by the EBR to be determinative of the appeal:

"CECOS shall submit a method for Bioaccumulation monitoring to the Ohio EPA, Central Office, Division of Water Quality Planning and Assessment, for approval within three months of the effective date of this permit. After the Ohio EPA has commented on CECOS's proposal, samples of CECOS's discharge water shall be collected and evaluated for the presence of bioaccumulative substances. A final report will be submitted prior to discharge each time monitoring is performed."

CECOS and Clermont County filed separate appeals with the EBR, which consolidated their cases for a *de novo* hearing. On April 24, 1991, the EBR entered its findings of fact, conclusions of law, and final order.

The EBR found that the director fashioned the permit after considering the safety history of CECOS, the vast number of unknown chemicals and hazardous wastes disposed of at the site, and the risk to Williamsburg's drinking water supply. The EBR concluded that the permit was both reasonable and lawful and consequently affirmed, although not expressly, the prior notice, the prior approval, and the PTI conditions in the permit. The EBR did expressly affirm the condition requiring CECOS to submit a BMP for approval

within three months of the effective date of the permit. The EBR also concluded that the permit should include the entire list of pollutants and chemicals listed in Section 264, Title 40, C.F.R., Appendix IX ("Appendix IX Pollutants"),[2] and affirmed the director's finding that the PC ponds were adequate and reasonable.

CECOS filed the present appeal on May 24, 1991, and Clermont County "cross-appealed" on June 3, 1991.[3]

The assignments of error raised by appellant CECOS challenge the prior approval and prior notice conditions in the permit. Because the assignments of error are interrelated, they shall be considered together.

By its first assignment of error, appellant CECOS maintains that the EBR erred in upholding the two conditions in the NPDES permit because the conditions were not supported by the EBR's findings of fact, in violation of R.C. 3745.05. By its second assignment of error, appellant CECOS maintains that the two conditions in the permit were unreasonable and unlawful.

The EBR and an appellate court apply different standards of review to decisions by the Director. In the *de novo* hearing, the EBR does not stand in the place of the Director of the EPA and may not substitute its judgment for that of the director as to factual issues, but may consider only whether the director's actions were unreasonable or unlawful. *Northeast Ohio Regional Sewer Dist. v. Shank* (1991), 58 Ohio St.3d 16, 26, 567 N.E.2d 993, 1002; *Citizens Commt. v. Williams* (1977), 56 Ohio App.2d 61, 10 O.O.3d 91, 381 N.E.2d 661; see R.C. 3745.05. Although the EBR has a wide degree of latitude as to the evidence presented in a *de novo* hearing, the EBR's findings and orders must be based upon the evidence adduced at the hearing before the EBR. *Northeast Ohio Regional Sewer Dist.*, at 24, 567 N.E.2d at 1000–1001.

In contrast, an appellate court must determine whether the decision of the EBR as to the reasonableness and lawfulness of the director's decision is supported by reliable, probative, and substantial evidence and is in accordance with law. *Bd. of Delaware Cty. Commrs. v. Columbus* (1985), 26 Ohio App.3d 6, 26 OBR 174, 497 N.E.2d 1367, paragraph two of the syllabus (*Williams* approved and followed); see R.C. 3745.06. This court attaches the following ordinary meanings to the terms "reliable, probative, and substantial": "dependable, more than superficial or speculative, and having substance

---

2. The EBR reversed the decision of the EPA to include thirty-two parameters not found in the Appendix IX list because evidence established that the thirty-two parameters were inappropriate to the permit. Neither appellant contests this part of the EBR decision.

3. Although labelled a "cross-appeal," Clermont County seeks affirmative relief, regardless of the outcome of the CECOS appeal, so that there are, in fact, two separate appeals.

or body, giving it weight and quality which entitles it to credence." *Robinson v. Whitman* (1975), 47 Ohio App.2d 43, 54, 75 O.O.2d 462, 469, 352 N.E.2d 167, 174.

By its assignments of error, appellant CECOS tacitly suggests that this court apply the same standard of review employed by the EBR. Rather than determining whether the permit conditions are reasonable and lawful, this court must review the record to determine whether the EBR decision as to permit conditions is supported by reliable, probative, and substantial evidence and is in accordance with law. *Williams, supra.*

■ By its first assignment of error, appellant CECOS maintains that the EBR erred in upholding the two conditions in the permit because the conditions are not in accordance with law. That is, appellant CECOS argues that the EBR's order affirming the permit conditions is not supported by the EBR's findings of fact, in contravention of R.C. 3745.05. R.C. 3745.05 provides that "[e]very order made by the board shall contain a written finding by the board of the facts upon which the order is based. * * * "

Appellant Clermont County and appellee director counter that the statute has been satisfied, contending that this court has construed the statute to require general, not specific, findings of fact that sufficiently support every order of the EBR and that the general findings of fact by the EBR do support the order. This is incorrect. The findings must be specific facts sufficient to support the conclusion.

In *Northeast Ohio Regional Sewer Dist. v. Shank* (July 6, 1989), Franklin App. No. 88AP–1058, unreported, 1989 WL 73867, this court, at 7, construed the above language of R.C. 3745.05 to require the EBR to make specific findings of fact that generally support the EBR's orders:

" * * * The statute does not require the board to set forth findings of fact addressing every contested issue; it merely requires findings of fact supporting the order. * * * Although more specific findings might have been more helpful to those affected by the decision, the board's findings * * * sufficiently supported its conclusion and complied with R.C. 3745.05."

Previously, in *Kripke–Tuschman Industries v. Williams* (July 31, 1979), Franklin App. No. 78AP–865, unreported, this court, at 9, explained the R.C. 3745.05 requirements as follows:

"Even where findings of fact * * * are required * * * they do not properly include an exhaustive review of the evidence but, rather, should be limited to the factual conclusions reached by the trier of the facts upon the controlling factual issues. The degree of specificity with which findings of fact are made falls within the discretion of the trier of facts."

In the present case, the EBR's specific findings of fact need to support its order affirming the prior notice and prior approval conditions in the permit. Although the EBR considered the evidence presented at the hearing and concluded that the permit was lawful and reasonable, the findings do not support the conclusion as to the permit conditions as written. That is, the specific findings of fact do not generally support the EBR's decision affirming the permit conditions.

The EBR's findings of fact sufficiently support its decision with respect to the extensive monitoring of pollutants. The permit requires CECOS to monitor Appendix IX Pollutants using prescribed analytical methods. EBR findings of fact, paragraph 42. The EBR finding that unknown hazardous wastes are stored at CECOS supports this decision.

Additionally, the EBR findings support its decision as to bioaccumulation testing. The permit requires CECOS to submit an approvable bioaccumulation monitoring plan ("BMP"), which would track chemicals as they progress through the biological food chain. The EBR found that such bioaccumulation testing was not included due to objective evidence demonstrating accumulation of chemicals. Rather, the EBR found that the plan was included to alleviate the risks of discharging into the environment unknown hazardous wastes stored at CECOS because bioaccumulation testing may detect pollutants that otherwise are undetectable through ordinary chemical analysis. EBR findings of fact, paragraph 36.

Since final guidelines for bioaccumulation testing had not been developed by the United States EPA or the Ohio EPA, the EBR affirmed the condition in the permit requiring CECOS to submit a BMP for approval by the EPA. EBR conclusions of law, paragraph 7. The EBR found this condition lawful pursuant to Ohio Adm.Code 3745–01–04 and 3745–33–04(B)(1)(a)(i), which authorize the director to determine in an NPDES permit the maximum level of pollutants necessary to keep water free from substances in concentrations that are toxic or harmful to human, animal, or aquatic life. Even though appellant CECOS challenges neither the extensive monitoring requirements nor the inclusion of the BMP condition in the permit, this court notes that the EBR found the BMP condition to be determinative of the appeal and made findings of fact to support its decision.

However, to the extent the EBR relies on the "history" of spills at the facility to support its decision as to the prior notice and prior approval conditions, we disagree. David Okerbloom, the EPA employee who drafted the NPDES permit, testified that the director included the prior notice and prior approval conditions due to the past "history" of spills at CECOS. In other words, the conditions were included because the director anticipated that

CECOS would violate the effluent limitations in the permit, including the monitoring and BMP condition, and the director wanted to prevent a violation before it occurred. In order for the findings of fact sufficiently to support the prior notice and prior approval conditions based *solely* upon "past history" of spills, the findings must be based on reliable, probative, and substantial evidence demonstrating that CECOS was likely to violate the permit limitations. The evidence must be more than speculative, it must be "dependable, more than superficial * * * and hav[e] substance or body, giving it weight and quality which entitles it to credence." *Robinson, supra.*

The history of spills provides no reliable, credible evidence that indicates a danger that CECOS will violate the effluent limitations and testing requirements set forth in the permit. Nor was evidence presented to show that any hazardous waste which exists on the roadways within the facility is such that the waste could be carried by rainwater runoff into the PC ponds. Further, because CECOS has closed and is not accepting any new hazardous wastes, there is only a remote possibility of trucks spilling hazardous wastes onto the roadways as hazardous waste is transported from one location within the facility to another. This "potential" for an intrafacility spill could possibly alter or increase the amount of hazardous waste flowing into the PC ponds but does not support a finding that the PC ponds will overflow, or that CECOS is likely to violate permit limits.

That rainwater might carry contaminants into the PC ponds, likewise, is not probative of whether they will overflow or whether CECOS is likely to violate the effluent limitations set forth in the permit. The record does not contain evidence either that in the past the PC ponds have ever overflowed such that hazardous wastes entered the East Branch or that CECOS discharged from the PC ponds in violation of the permit.

Here, speculation by the director that CECOS might violate the permit does not rise to reliable, probative, and substantial evidence permitting a finding that it was reasonable for the director to impose conditions upon a supposition that CECOS may be likely to violate the permit. That in the past CECOS has had approximately one "incident" per year[4] does not present a sufficient likelihood either of future spills in the now-closed facility or that CECOS would violate the permit in the future in light of the restrictions placed in the permit for the purpose of preventing future spills. Both this court and the EBR must presume that CECOS will comply with the conditions of the permit once the permit has been issued, in the absence of reliable, probative, and

---

4. The EBR found that an "incident" includes leachate spills upon a road surface or an exposing of hazardous waste materials due to various chemical reactions in the buried solid waste cells and is not limited to "spills" into the East Branch.

**10**

substantial evidence reasonably permitting a finding otherwise.[5]   If CECOS violates the effluent limitations in the permit, once issued, the proper procedure is through enforcement proceedings which may result in terminating the permit.   See Ohio Adm.Code 3745–33–10.

The findings of fact with respect to the past history of spills at the facility do not support the EBR's order affirming the prior notice and prior approval conditions.   However, the EBR made findings of fact which may support prior approval and notice conditions if reasonably tailored to the facts herein. Specifically, the EBR found that the presence of unknown and uncharacterized chemicals at the facility made it difficult for CECOS to predict accurately what pollutants might be present in CECOS's discharge, that the monitoring program might reveal the presence in the PC pond water of potentially harmful levels of pollutants for which no effluent limits have been specified and that CECOS's wastewater discharge was located a short distance upstream from a municipal drinking water supply.   Such findings could support proper prior notice and approval conditions, if drawn to meet the purpose sought to be achieved.

Unfortunately, the conditions imposed herein are not so drawn.   For example, the prior notice and approval conditions require that CECOS obtain prior approval to discharge unrelated to whether analyses reveal that "monitor-only" pollutants are present, or the levels of pollutants are more than or equal to those previously approved by OEPA.   Furthermore, the conditions set no time period in which OEPA is required to grant or deny a request for approval to discharge, thereby delaying indefinitely the discharge of wastewater that contains acceptable levels of pollutants, and exacerbating the difficulty of disposing, by other means, of wastewater that contains unacceptable levels of pollutants.

As a result, while the EBR's findings of fact may support prior approval and notice conditions, the conditions imposed herein are not reasonable under the circumstances.   Since, however, the findings may support proper prior notice and approval conditions, this issue may be addressed upon remand. Accordingly, appellant CECOS's first and second assignments of error are well taken.

■   By appellant Clermont County's first assignment of error, it asserts that the EBR finding that the PC pond design is adequate and reasonable is not supported by reliable, probative, and substantial evidence.

---

5.   If there were reliable, probative, and substantial evidence that CECOS is likely to violate the effluent limits in the permit, the order of the EBR would be contrary to Ohio Adm.Code 3745–33–04.   See Clermont County's third assignment of error.

We disagree. Reliable, probative, and substantial evidence on the construction and capacity of the PC ponds was adduced at the *de novo* hearing before the EBR. David Okerbloom, the EPA employee who drafted the NPDES permit, testified before the EBR that the PC ponds were designed to hold the amount of water generated by a storm that could occur over a period of twenty-four hours, once every twenty-five years. Consequently, the PC ponds have a greater capacity than the typical retention pond reviewed by the Ohio EPA, which is designed to hold the amount of water from a storm that could occur over twenty-four hours, once every ten years. Even assuming a possibility exists that the PC ponds could overflow, the evidence adduced indicates that the ponds are of a sufficient capacity to accommodate the reasonably predictable rainfall in the region. Accordingly, appellant Clermont County's first assignment of error is not well taken.

By its second assignment of error, appellant Clermont County asserts that the EBR erred in failing to address on appeal whether CECOS should be required to give prior notice of discharge to downstream public water supplies.

The question raised by this assignment of error is whether the EBR must address every assignment of error raised on appeal. Although App.R. 12(A) mandates that an appellate court address every error assigned and briefed, an administrative board of review is not so bound. The appellate rules apply to "appeals to courts of appeals from trial courts of record in Ohio," not to appeals to administrative agencies. Appeals to the Environmental Board of Review are governed by R.C. Chapter 3745. See, however, R.C. 2505.03.

As we already discussed, the EBR must make written findings of fact upon which every order is based, pursuant to R.C. 3745.05. Unlike App.R. 12(A), this statute does not require that each and every issue assigned as error be addressed on appeal. Therefore, the EBR was not required specifically to address whether downstream users of the water supply should receive prior notice of discharge so long as failure to do so does not render the EBR decision either contrary to law or unsupported by reliable, probative, and substantial evidence.

Accordingly, appellant Clermont County's second assignment of error is not well taken.

Finally, by appellant Clermont County's third assignment of error, it contends that the EBR erred in affirming the permit because CECOS was allowed to submit monitoring and waste management plans *after* the permit had been issued. In other words, appellant Clermont County argues that the

proper procedure would have been for the director to have approved those plans *before* the permit was issued, not after.

Appellee director concedes that the standard procedure is to approve a PTI before granting an NPDES permit. However, appellee points out that the director is authorized to place conditions on an NPDES permit pursuant to R.C. 6111.03(J) and Ohio Adm.Code 3745–33–05(B). Since governing laws and regulations do not prohibit the director from including such conditions in an NPDES permit, appellee director argues this court should affirm the order of the EBR affirming these conditions.

Part I(C) of the permit provides that, within four months of the effective date of the permit, CECOS shall submit to the EPA:

"A. A complete and approvable Permit-to-Install (PTI) application, with 'as built' drawings and detailed plans for sewers, ditches, and all holding ponds, and any treatment facilities believed necessary to achieve final effluent limitations including those yet to be constructed.

"B. A management plan for the collection, storage and disposal of all Oil and Grease, scum, and sludge removed, generated or otherwise accumulated by these ponds, tributary collection system and appurtenances."

Further, Part II(F) of the permit provides that CECOS must submit a BMP to the EPA within three months of the effective date of the permit:

"CECOS shall submit a method for Bioaccumulation monitoring to the Ohio EPA * * * for approval within three months of the effective date of this permit. * * *"

This court must determine whether the EBR order affirming the director's inclusion of these conditions in the permit was supported by reliable, probative, or substantial evidence and was in accordance with law. See *Williams, supra.* The director is authorized to issue an NPDES permit upon determining that the three criteria of Ohio Adm.Code 3745–33–04(A)(1) have been satisfied:

"(a) The authorized discharge levels specified * * * [in the permit] are not being exceeded by the applicant; and

"(b) Adequate provisions for monitoring to obtain required pollutant discharge information have been made; and

"(c) If required by the Ohio EPA, performance tests * * * demonstrate that the discharge is in compliance with the authorized discharge levels."

The record contains no evidence that CECOS was exceeding the effluent limits set forth in the permit or that the EPA required performance tests, so that the first and third criteria appear to have been satisfied. The second criterion is the subject of this assignment of error because the director

included monitoring provisions as conditions in the permit. We must determine whether sufficient evidence indicates that the monitoring provisions taken by CECOS prior to the issuance of the NPDES permit were "adequate," pursuant to Ohio Adm.Code 3745–33–04.

As previously discussed, bioaccumulation monitoring is a new procedure with no mandated guidelines. Adding bioaccumulation monitoring to the conditions of the NPDES permit herein was a precautionary measure taken by the director due to the unknown chemicals stored at CECOS. Also, sludge management is typically approved after the NPDES permit has been issued, and is not determinative of whether monitoring provisions are adequate. On the contrary, approving a PTI after the NPDES permit seems inconsistent with a finding that monitoring provisions were adequate.

The record contains some evidence that CECOS, prior to the issuance of the permit, had taken steps to monitor discharge of pollutants enumerated in the permit. David Okerbloom stated that he inspected the CECOS facility before issuing the NPDES permit and was familiar with the design of the PC ponds and the pumping unit. However, because he was unfamiliar with the actual construction and operation of the PC ponds and treatment works, Okerbloom expected more information before issuing the PTI. Okerbloom explained that, although the normal procedure is to issue a PTI before an NPDES permit, the circumstances in this case warranted extraordinary actions. He testified that the NPDES permit was issued first so that the director could better decide if the PTI would accommodate the limits of the permit.

As appellee correctly asserts, the law affords the director discretion to place conditions in an NPDES permit. The law does, however, mandate that the director find that "adequate" provisions for monitoring required pollutants have been made before an NPDES permit may be issued. "Adequate" is defined in Black's Law Dictionary (5 Ed. Rev.1979) 36, as "sufficient; equal to what is required." "Sufficient" is defined as "adequate, enough, as much as may be necessary."

The plain meaning of the second criterion in Ohio Adm.Code 3745–33–04 indicates that "adequate" in this instance must mean sufficient monitoring to obtain required pollutant discharge information. Okerbloom himself testified that he needed more information on the PC ponds and the operation of the treatment works before issuing the PTI. Clearly, the second criterion could not have been satisfied under such circumstances, and the NPDES permit was "prematurely" issued. The ordinary procedure would have been to draft the parameters to be included in the NPDES permit, issue the PTI, and then issue the NPDES permit.

Notwithstanding that the ordinary procedure was not followed in this case, the decision of the EBR as to the PTI condition is not contrary to law. The director concluded that the PTI could be drafted more effectively after the NPDES permit had been issued. The need for CECOS to discharge rainwater collected and stored in PC ponds will increase with time. The greater the delay in issuing CECOS an NPDES permit, the greater the risk of the PC ponds overflowing and spilling into the source of the public water supply. Thus, postponing the issuance of the NPDES permit until the PTI could be issued would only have exacerbated the threat of pollutants entering the environment. The action of the director reduced the risk of overflow and placed strict guidelines on the discharge of effluents while awaiting the determination of proper procedures, guidelines, and limitations necessary for the issuance of a PTI.

Thus, although the "proper" procedure was not followed in this case, sufficient evidence demonstrates that the exceptional circumstances of the CECOS facility warranted that the PTI be included as a condition in the NPDES permit.

Accordingly, appellant Clermont County's third assignment of error is not well taken.

For the foregoing reasons, appellant CECOS's two assignments of error are sustained because, to the extent the EBR order affirmed the prior notice and prior approval conditions in the NPDES permit, it was not supported either by the findings of fact or by reliable, probative, and substantial evidence; appellant Clermont County's three assignments of error are overruled, the order of the Environmental Board of Review is reversed, and this cause is remanded to that board for further proceedings in accordance with law consistent with this opinion.

*Order reversed*
*and cause remanded.*

Peggy Bryant and Petree, JJ., concur.