THERMAL–TRON, INC., Appellee,

v.

SCHREGARDUS, Dir., Appellant.

THERMAL–TRON, INC., Appellee,

v.

SCHREGARDUS, Dir., et al., Appellees;

Neighborhood Environmental Coalition, Appellant.

THERMAL–TRON, INC., Appellee,

v.

SCHREGARDUS, Dir., et al., Appellees;

City of Cleveland, Appellant.

[Cite as *Thermal–Tron, Inc. v. Schregardus* (1993), 89 Ohio App.3d 816.]

Court of Appeals of Ohio,
Franklin County.

Nos. 93AP–331, 93AP–350 and 93AP–352.

Decided Aug. 10, 1993.

*Allen & Hodgman, Bruce C. Allen* and *Blair Hodgman,* for appellee Thermal–Tron, Inc.

*Lee Fisher,* Attorney General, *Christopher Korleski* and *Joan R. Kooistra,* Assistant Attorneys General, for appellees and appellant Donald R. Schregardus, Director of Environmental Protection.

*Joseph P. Meissner,* for appellant Neighborhood Environmental Coalition.

*Danny R. Williams,* Director of Law, *William M. Ondrey Gruber* and *Martha R. McCorkle,* Assistant Directors of Law, for appellant City of Cleveland.

---

PETREE, Judge.

Appellant, Donald R. Schregardus, Director of Environmental Protection, appeals from an order of the Environmental Board of Review vacating the director's denial of Thermal–Tron, Inc.'s permit to operate a medical waste incinerator. Appellant cites the following as error:

"I.   The EBR erred in substituting its judgment for that of the Director and the Cuyahoga County Common Pleas Court and concluding that Thermal–Tron's operation of its incinerator was only for purposes of 'debugging'."

"II.   In concluding that the Director's action was unlawful, the EBR improperly applied this court's ruling in *CECOS International v. Shank* (1992), 79 Ohio App.3d 1, 606 N.E.2d 973, to this case, thereby depriving O.R.C. § 3704.03(G) of its plain and unambiguous meaning."

Thermal–Tron, Inc. ("Thermal–Tron") is an Ohio Corporation formed for the purpose of constructing and operating an infectious waste incinerator. Thermal–Tron obtained a Permit to Install ("PTI") pursuant to Ohio Adm.Code 3745–31–02 and began construction of its facility. Thermal–Tron's PTI contained emission limitations and certain Best Available Technology ("BAT") requirements. After completing construction but prior to obtaining a conditional operating permit, Thermal–Tron began testing its equipment to determine if it met the emission limitations set forth in its PTI. Ikram Habib, major shareholder and president of Thermal–Tron, twice attempted to obtain a conditional permit to operate. The director never took action on Habib's requests. Thermal–Tron continued to utilize its facility regardless of its lack of operating permit. Eventually, after several modifications, Thermal–Tron's emissions were within acceptable levels. Prior to this occurring, the Attorney General filed suit against Thermal–Tron for operating two infectious waste incinerators in contravention of Ohio EPA air contaminant emission standards and the company's PTI. A bench trial was held in the Cuyahoga Court of Common Pleas and the court enjoined Thermal–Tron from operating its incinerators and assessed a $41,300 fine. The trial court's decision was affirmed on appeal. See *State ex rel. Celebrezze v. Thermal–Tron, Inc.* (1992), 71 Ohio App.3d 11, 592 N.E.2d 912.

On October 10, 1989, prior to trial on the Attorney General's complaint, Thermal–Tron received notice that a staff determination had been made recom-

mending that the director issue a permit to operate. Public hearings on the permit application were held on November 13, 1989 and January 18 and 19, 1990. Public response was negative toward the purposed permit.

On June 4, 1990, the director notified Thermal–Tron that its permit was going to be denied. Thermal–Tron requested an adjudication hearing. The hearing was held before an Ohio EPA hearing examiner, who recommended that a permit to operate be granted. Nevertheless, the director denied Thermal–Tron's permit on September 3, 1990, citing the company's past violations of applicable emission standards and other rules and the uncertainty of future compliance. The director's decision was appealed to the Environmental Board of Review, which found the director's action was unlawful and ordered it vacated. The director filed a timely appeal to this court.

Any person who was a party to a proceeding before the director may participate in an appeal to the Environmental Board of Review for an order vacating or modifying the action of the director. R.C. 3745.04. If an adjudication hearing was conducted by the director, the board is confined to the record as certified. R.C. 3745.05. The board is to review the director's actions to determine if they were lawful and reasonable. If not, the board may vacate or modify the director's decision. R.C. 3745.05.

The board found the director's actions were unlawful based on the director's presumption that Thermal–Tron would not comply with the terms of an operating permit. The board cited this court's decision in *CECOS Internatl., Inc. v. Shank* (1992), 79 Ohio App.3d 1, 606 N.E.2d 973, for the proposition that the director must presume compliance with the conditions of a permit absent evidence to the contrary.

The director in *CECOS* granted a permit authorizing discharge of Potentially Contaminated ("P.C.") water by a hazardous waste facility. The permit required prior notice and approval before discharge of the P.C. water. The director based the inclusion of these restrictions on a presumption that CECOS would not comply with the permit based on its prior behavior. The court held the director's presumption of noncompliance was not supported by reliable, probative and substantial evidence. Absent such evidence, imposition of conditions in a permit based on a presumption of noncompliance was improper.

The director argues *CECOS* is inapplicable in the present matter. The factual circumstances of *CECOS* are distinguishable from the case at bar. However, the concept that the director must not presume wrongdoing absent evidence to the contrary is as applicable in this matter as it was in *CECOS*.

Fundamental fairness requires a presumption of compliance absent reliable, probative and substantial evidence to the contrary. This is not to suggest that the director may not review prior behavior in determining whether a permit may issue. R.C. 3704.03(G) provides that "[o]perating permits may be denied or revoked for failure to comply with Chapter 3704." Obviously, it is within the director's discretion to deny permits on prior misconduct. Furthermore, the director is not required to grant a permit. The decision to grant a permit is a discretionary act of the director, provided there is a "showing satisfactory to the director or his representative, that the air contaminant source is being operated in compliance with applicable emission standards and other rules." R.C. 3704.-03(G). If an applicant proves his facility is being operated in compliance within applicable emission standards, it is not unreasonable to expect the director to presume the applicant will continue to operate his facility properly. This presumption can be overcome by adequate evidence to the contrary.

■ The director's discretion is not unbridled and is subject to review by the Environmental Board of Review. The EBR reviewed the evidence upon which the director based his decision and found it did not support a finding presuming noncompliance. The board acknowledged Thermal–Tron had violated R.C. Chapter 3704, but, in view of the entire record, the violations were not of a degree to justify the denial of a permit. We do not find error in the board's decision.

■ Finally, the director alleges the board erred when determining Thermal–Tron operated its incinerators purely for the purpose of "debugging." A review of the board's findings reveal it was aware of the extent of Thermal–Tron's activities. The board's eighth conclusion of law reads in pertinent part:

" * * * It must be more than a recitation by the Director of the number of violations, especially in this case where nearly 80% of the violations are for operating without a permit. The remainder of the violations, though technically substantive in nature, had little or no effect on the general air quality."

Clearly, the board was aware of the nature of Thermal–Tron's violations. While the board's findings state that "[p]rior to this time [August 1989] it had operated similarly for debugging and refinement and adjustment purposes * * *," nowhere does the board state that Thermal–Tron did not violate R.C. Chapter 3704. The board is not bound by every conclusion drawn by the Cuyahoga County Court of Common Pleas in this matter. The trial court and the board each had a different purpose for evaluating the activities of Thermal–Tron. No one contests that violations of R.C. Chapter 3704 occurred, which was the ultimate factual issue of both the common pleas court and the board. The

principle of collateral estoppel is not applicable in this matter and, therefore, the director's allegations on this issue are without merit.

Based on the foregoing, appellant's assignments of error are overruled. The decision of the Environmental Board of Review is supported by substantial, reliable and probative evidence and is in accordance with law. The board's decision is affirmed.

*Judgment affirmed.*

BOWMAN and TYACK, JJ., concur.