OPINION
{¶ 1} Appellant, Sandusky Dock Corporation ("SDC"), appeals from the January 9, 2003 findings of fact, conclusions of law, and final order of the Environmental Review Appeals Commission ("ERAC"). SDC operates a coal transloading facility on the shore of Lake Erie in Erie County, Ohio. Appellant stores large amounts of coal at this facility in piles reaching up to 60 feet in height and containing as much as 200,000 tons of coal. On June 8, 2000, Don Greene, a patron of Sandusky Harbor Marina ("marina"), a marina located near SDC's coal facility, filed a verified complaint with the director alleging that coal dust from SDC's facility was damaging boats moored at the marina, and therefore constituted a prohibited nuisance under Ohio Adm. Code 3745-15-07(A). Following an investigation into the allegations contained in the verified complaint, the director issued a modified permit to operate ("PTO") to SDC. In this PTO, the director concluded that probable cause existed to support a finding that fugitive dust emissions from SDC's coal facility constituted a public nuisance in violation of Ohio Adm. Code 3745-15-07(A). Based on this finding, the director modified SDC's PTO to prohibit coal dust emissions in excess of those permitted by Ohio Adm. Code 3745-17-07(B)(6) and to require SDC to utilize reasonably available emission control measures pursuant to Ohio Adm. Code 3745-17-08(B).
 {¶ 2} On November 16, 2001, SDC appealed the director's action to ERAC raising the following two assignments of error:
1. Special Term and Condition Part II.A1. of Appellant's recently issued Permit to Operate its coal dock facility is unlawful and unreasonable because it requires" no visible emissions except for 13 minutes in any hour." Compliance with this requirement is technically infeasible and economically unreasonable because in some occurrences, particularly during extreme dry conditions with high winds, this requirement cannot be met regardless of the dust suppressant systems used.
2. Special Term and Condition Part II.A.2.g. is unreasonable and unlawful in concluding that there has been probable cause to believe that fugitive dust emissions from the coal storage piles have caused a violation of OAC 3745-15-07, Air Pollution Nuisances, because such a conclusion is unsupported by the facts and the applicable legal standards.
In response, the director moved to dismiss SDC's first assignment of error and to exclude all evidence of the technical feasibility and economic unreasonableness of the director's action. ERAC granted the director's motion. Thereafter, ERAC held a de novo hearing on SDC's remaining assignment of error. On January 9, 2003, ERAC issued findings of fact, conclusions of law, and a final order affirming the director's action. SDC appeals from ERAC's order assigning the following errors:
Assignment of Error No. 1:
ERAC erred in excluding Sandusky Dock's evidence of the technical feasibility and economic reasonableness of the Director's action in its hearing to review the Director's action.
Assignment of Error No. 2:
ERAC erred in finding that the emissions from Sandusky Dock violated section 3745-15-07 of the Ohio Administrative Code.
 {¶ 3} Preliminarily, in reviewing a decision of the director, ERAC is limited to considering whether the director's action was unreasonable or unlawful, given the evidence presented at the de novo hearing; it may not substitute its judgment for that of the director as to factual determinations. CECOS Internatl., Inc. v. Shank (1992), 79 Ohio App.3d 1,6; see R.C. 3745.05. In contrast, an appellate court is charged with determining whether ERAC's order concerning the reasonableness and lawfulness of the director's decision is supported by reliable, probative and substantial evidence and is in accordance with law. Id.; see R.C.3745.06.
 {¶ 4} In its first assignment of error, SDC argues that ERAC's decision not to allow it to put on evidence relating to the technical feasibility and economic reasonableness of complying with the director's action is not in accordance with law.
 {¶ 5} Coal dust constitutes "fugitive dust" as that term is defined in Ohio Adm. Code 3745-17-01(6). Specifically, Ohio Adm. Code 3745-17-01(6) defines "fugitive dust" as "particulate matter which is emitted from any source by means other than a stack." In turn, Ohio Adm. Code 3745-17-01(7) defines a "fugitive dust source" as "any source which emits fugitive dust or which emitted fugitive dust prior to the installation of any control equipment that was installed on or after February 15, 1972." Accordingly, to the extent that SDC's coal transloading facility emits coal dust, it constitutes a fugitive dust source.
 {¶ 6} Ohio Adm. Code 3745-17-07(B) sets forth emission standards applicable to fugitive dust sources and Ohio Adm. Code 3745-17-08(B) sets forth the reasonably available control measures that must be taken to comply with those emission standards. Here, the director acted pursuant to Ohio Adm. Code 3745-17-08(A)[1] and 3745-17-07(B)(11)(e)[2] in subjecting SDC's coal transloading facility to the requirements of Ohio Adm. Code 3745-17-07(B) and 3745-17-08(B). Specifically, the director found that probable cause exists to believe that the dust emitted by SDC's coal transloading facility constituted a public nuisance in violation of Ohio Adm. Code 3745-15-07(A).[3]
 {¶ 7} R.C. 3704.03 is the enabling statute that provides the director with all of his authority to act. R.C. 3704.03(R) provides the director with the authority to require the abatement of or prohibit certain emissions or require emission control devices or measures as follows:
The director of environmental protection may do any of the following:
* * *
Issue, modify, or revoke orders requiring abatement of or prohibiting emissions which violate applicable emission standards or other requirements of this chapter and rules adopted thereunder, or requiring emission control devices or measures in order to comply with applicable emission standards or other requirements of this chapter and rules adopted thereunder. Any such order shall require compliance with applicable emission standards by a specified date and shall not conflict with any requirement of the federal Clean Air Act. In the making of suchorders, the director, to the extent consistent with the federal Clean AirAct, shall give consideration to, and base his determination on, evidencerelating to the technical feasibility and economic reasonableness ofcompliance with such orders and their relation to benefits to the people of the state to be derived from such compliance. * * *
(Emphasis added.)
 {¶ 8} In the present case, the director's action prohibited SDC's coal transloading facility from emitting fugitive dust for more than 13 minutes in any hour pursuant to Ohio Adm. Code 3745-17-07(B)(6) and required SDC to take reasonably available control measures to ensure compliance with the 13 minute limitation pursuant to Ohio Adm. Code3745-17-08(B). Although the director's action plainly prohibited SDC from releasing "emissions which violate applicable emission standards" and required SDC to take "emission control * * * measures in order to comply with applicable emission standards," the director contends that because the action was taken by means of a PTO rather than an order, it is not subject to R.C. 3704.03(R)'s requirement that the director "give consideration to, and base his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance." Specifically, the director contends that because he took the action at issue by PTO, he was operating under the authority granted by R.C.3704.03(G), which does not require that he consider or base his determination on evidence relating to the technical feasibility or economic reasonableness. R.C. 3704.03(G) provides, in relevant part, as follows:
The director of environmental protection may do any of the following:
* * *
Adopt, modify, suspend, and rescind rules prohibiting the operation or other use of any new, modified, or existing air contaminant source unless an operating permit has been obtained from the director or his authorized representative * * *. Applications for operating permits shall be accompanied by such plans, specifications, and other pertinent information as the director may require. Operating permits may be issued for a period determined by the director not to exceed five years, are renewable, and are transferable. The director shall specify in each operating permit that the permit is conditioned upon payment of the applicable fees as required by section 3745.11 of the Revised Code and upon the right of his authorized representatives to enter upon the premises of the person to whom the permit has been issued, at any reasonable time and subject to safety requirements of the person in control of the premises, for the purpose of determining compliance with this chapter, the rules adopted thereunder, and the conditions of any permit, variance, or order issued thereunder. Operating permits may be denied or revoked for failure to comply with this chapter or the rules adopted thereunder. An operating permit shall be issued only upon a showing satisfactory to the director or his representative that the air contaminant source is being operated in compliance with applicable emission standards and other rules or upon submission of a schedule of compliance satisfactory to the director for a source that is not in compliance with all applicable requirements at the time of permit issuance, provided that the compliance schedule shall be consistent with and at least as stringent as that contained in any judicial consent decree or administrative order to which the air contaminant source is subject. The rules shall provide for the issuance of conditional operating permits for such reasonable periods as the director may determine to allow the holder of an installation permit, who has constructed, installed, located, or modified a new air contaminant source in accordance with the provisions of an installation permit, to make adjustments or modifications necessary to enable the new air contaminant source to comply with applicable emission standards and other rules. Terms and conditions of operating permits issued pursuant to this division shall be federally enforceable for the purpose of establishing the potential to emit of a stationary source and shall be expressly designated as federally enforceable. Any such federally enforceable restrictions on a source's potential to emit shall include both an annual limit and a short-term limit of not more than thirty days for each pollutant to be restricted together with adequate methods for establishing compliance with the restrictions. In other respects, operating permits issued pursuant to this division are enforceable as state law only. Noapplication [for a permit] shall be denied or permit revoked or modifiedwithout a written order stating the findings upon which denial,revocation, or modification is based. A copy of the order shall be sent to the applicant or permit holder by certified mail.
(Emphasis added.)
 {¶ 9} R.C. 3704.03(G) simply does not vest the director with the authority to impose emission standards or require the implementation of emission control measures by means of a PTO; instead, the section merely authorizes the director to issue, deny, revoke, or modify PTOs based upon the applicant's compliance with R.C. Chapter 3704 and rules adopted thereunder. When R.C. 3704.03(G) is read in conjunction with R.C.3704.03(R), it is readily apparent that the director may not act by PTO to require the abatement of or prohibit emissions which violate visible emission standards, such as those contained in Ohio Adm. Code3745-17-07(B), or require emission control measures, such as those contained in Ohio Adm. Code 3745-17-08(B). Rather, pursuant to R.C.3704.03(R), the director must take such action by order, giving consideration to, and basing his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance with the order. Only after such an order has been issued, may the director take action with respect to a PTO pursuant to R.C. 3704.03(G). This reading of the two sections is supported by the final sentence of R.C.3704.03(G), which expressly forbids the director from denying, revoking, or modifying a PTO without also issuing a "written order stating the findings upon which denial, revocation, or modification is based." Thus, in the present case, the director was required to issue an order finding that SDC coal dust emissions were creating a public nuisance in violation of Ohio Adm. Code 3745-15-07(A) and in accordance with R.C. 3704.03(R) determine the extent to which this violation required SDC to abate such emissions in accordance with the emission standards set forth in Ohio Adm. Code 3745-17-07(B) and to implement the emission control measures set forth in Ohio Adm. Code 3745-17-08(B). Having issued such an order, the director would then be free to modify SDC's PTO pursuant to R.C.3704.03(G) to require compliance with the order.
 {¶ 10} To the extent that the director contends that he is authorized by Ohio Adm. Code 3745-17-08(A)(2) or some other regulation or rule to subject SDC's coal transloading facility to the requirements of Ohio Adm. Code 3745-17-07(B) and 3745-17-08(B) by means of a PTO he is mistaken. R.C. 3704.03(R) is the only statutory provision that provides the director with such authority, and it is well established that an administrative agency may not confer powers on itself by rule that exceed the powers conferred on the agency by statute. Burger Brewing Co. v.Thomas (1975), 42 Ohio St.2d 377, 379; State v. Price (Aug. 23. 1984), Sandusky App. No. S-84-27.
 {¶ 11} Because the director's action requiring SDC to substantially abate its emission of coal dust and requiring SDC to take reasonably available control measures to abate its emissions does not comport with the requirements of R.C. 3704.03(G) and (R), the action was unlawful. In particular, the director did not take such action pursuant to an order or consider evidence relating to the technical feasibility and economic reasonableness of his action. Because the director's action was unlawful, and because ERAC took no steps to cure the defects in the director's action, but also failed to comply with R.C. 3704.03(R) by refusing to consider evidence relating to the technical feasibility and economic reasonableness of the director's action during its de novo hearing, ERAC's order affirming the director's action is not in accordance with law and must be reversed.
 {¶ 12} SDC's first assignment of error is sustained.
 {¶ 13} Our resolution of SDC's first assignment of error renders SDC's second assignment of error moot and we decline to address it. App.R. 12(A)(1)(c).
 {¶ 14} SDC's first assignment of error having been sustained and its second assignment of having been declared moot, the ERAC's order is reversed and this cause is remanded to ERAC for further proceedings consistent with this opinion.
Order reversed and cause remanded.
Watson, J., concurs.
BRYANT, J., dissents.
[1] Ohio Adm. Code 3745-17-08(A)(2) provides in relevant part as follows: "[T]he requirements of paragraph (B) of this rule shall apply to any fugitive dust source regardless of location if, in the director's judgment, probable cause exists to believe that such source is causing or contributing to a violation of rule 3745-15-07 * * * of the Administrative Code. In such cases, the director may require the owner or operator of the fugitive dust source to apply for and obtain a permit to operate for the source in accordance with rule 3745-35-02 of the Administrative Code, and/or require the owner or operator to submit and implement a control program which will bring the fugitive dust source into compliance with the requirements of paragraph (B) of this rule as expeditiously as practicable."
[2] Ohio Adm. Code 3745-17-07(B)(11)(e) provides in relevant part as follows: "The visible particulate emission limitations specified in paragraphs (B)(1) to (B)(9) of this rule shall not apply to the following:
"* * *
"(e) Any fugitive dust source which is not located within the geographical areas specified in Appendix A of rule 3745-17-08 of the Administrative Code, unless the director, in accordance with paragraph(A)(2) of rule 3745-17-08 of the Administrative Code, requires the owneror operator to submit and implement a control program which will bringthe fugitive dust source into compliance with the requirements ofparagraph (B) of rule 3745-17-08 of the Administrative Code * * *." (Emphasis added.)
[3] Ohio Adm. Code 3745-15-07(A) provides as follows: "Except as provided in paragraph (B) of this rule, the emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, odors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is hereby found and declared to be a public nuisance. It shall be unlawful for any person to cause, permit or maintain any such public nuisance."