**RED HILL FARM TRUST, Appellant,**

**v.**

**SCHREGARDUS, Dir., Appellee.**

[Cite as *Red Hill Farm Trust v. Schregardus* (1995), 102 Ohio App.3d 90.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APH07–1046.

Decided March 23, 1995.

*Samuels & Northrop Co., L.P.A.,* and *David E. Northrop; Miller & Kyler* and *William A. Kyler,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Paul D. Jesse,* Assistant Attorney General, for appellee.

*Larry R. Gearhardt,* for *amicus curiae,* Ohio Farm Bureau Federation.

PEGGY BRYANT, Judge.

Appellant, Red Hill Farm Trust ("RHF'"), appeals from a decision of the Ohio Environmental Board of Review ("EBR") upholding an order issued by appellee, Donald R. Schregardus, Director of the Ohio Environmental Protection Agency ("director"), which requires RHF to cease construction of all animal waste "disposal systems" until such time as it has received permits to install all such systems.

RHF owns a large tract of land located along State Route 22 in Guernsey County, Ohio, upon which it intends to operate a factory dairy farm. The farm as planned will include animal confinement barns, a milking operation, and a system for treating and storing animal waste generated at the farm; the treated animal waste, in turn, will be applied to the farm acreage in producing cattle feed. Construction on the project began during the summer or fall of 1990. However, the Ohio Environmental Protection Agency ("OEPA") did not become aware of the project until sometime later when a nearby resident notified the OEPA that a large-scale farming operation was under construction at the RHF site.

On November 1, 1990, officials from OEPA's Southeast District Office inspected the farm site and met with RHF's manager for the project. OEPA's inspection revealed that excavation for an animal waste disposal system and animal barns was well under way, and that RHF projected a herd size for the facility of four thousand dairy cattle within ten years. Based on that information, OEPA informed RHF that it was required to obtain a permit to install the animal waste disposal system, and that to obtain the permit, RHF must submit an application together with comprehensive and detailed plans and specifications for the project.

Over the next eighteen months, OEPA repeatedly requested that RHF apply for a permit to install its animal waste disposal system. RHF, however, failed to comply with OEPA's requests, arguing that it had reduced the number of cattle that it intended to place at the dairy farm, thus bringing its disposal system within a small-farm exception to the permit requirement. Despite RHF's claimed reduction in the size of its projected herd, no similar reduction was made in the size of the facilities being constructed at the site. Consequently, pursuant to R.C. Chapter 6111, the director, on April 22, 1992, issued orders requiring RHF (1) to immediately cease construction of all disposal systems, and (2) to apply for permits to install such systems not later than ninety days from the effective date of the director's order.

RHF appealed the director's orders to the EBR on May 11, 1992, and a *de novo* evidentiary hearing on the merits of RHF's appeal was held the following September. At the hearing, the director alleged that RHF was in the process of

constructing two animal waste "disposal systems"[1] for which it has not acquired permits to install as required by R.C. 6111.44, 6111.45 and Ohio Adm.Code 3745–31–02: a manure digester/storage system consisting of four large, mechanically stirred, heated, underground tanks, as well as an animal waste holding lagoon. RHF responded that because it now intended to place only four hundred cattle at its dairy farm, any disposal systems constructed to serve the farm were excepted from the permit requirement pursuant to R.C. 6111.03(R) and 6111.44. It further denied that it was building an animal waste storage lagoon at the farm.

On April 27, 1993, the EBR issued a final order affirming the director's order. The EBR's order was issued, however, with only two of its three board members participating: one member authored the order, and the second dissented. The third member of the EBR did not participate in the decision because she was not a member of the board at the time of the *de novo* hearing. On RHF's appeal, this court reversed the board's order, finding that it was invalid due to the absence of a two-member concurrence as required by R.C. 3745.02. However, concluding that the third member's absence from the *de novo* hearing did not prevent her from participating in the decision as long as she first reviewed and examined the record of the hearing, this court remanded the matter to the EBR for an order in which at least two board members concurred. *Red Hill Farm Trust v. Schregardus* (Mar. 15, 1994), Franklin App. No. 93AP–749, unreported, 1994 WL 85316.

On remand, the third board member "thoroughly reviewed and examined the record and transcript of proceedings," and on June 21, 1994, the EBR issued a second final order affirming the orders of the director, this time with two board members concurring in the decision. RHF appeals, assigning the following errors:

"I. The Environmental Board of Review erred as a matter of law in holding that Section 6111.03(H), Revised Code, authorizes the director to issue an enforcement order requiring cessation of construction of a facility for failure to obtain a permit to install.

"II. The Environmental Board of Review erred as a matter of law in holding that a livestock barn and associated waste management facilities for four hundred cows (five hundred sixty animal units) are not within the exemption from the requirement to obtain a permit to install afforded by law to facilities involving less than one thousand animal units.

---

1. The parties do not dispute in this appeal that both a manure digester and an animal waste holding lagoon constitute "disposal systems" for purposes of R.C. Chapter 6111. R.C. 6111.01(G) defines a "disposal system," for purposes of R.C. Chapter 6111, as "a system for disposing of sewage, industrial waste, or other wastes, and includes sewerage systems and treatment works."

"III. The Environmental Board of Review erred as a matter of law in holding that a recipient of an enforcement order issued by the director bears the burden of proof before the EBR that the violations of law alleged in the order did not occur.

"IV. The Environmental Board of Review erred in concluding that the evidentiary record contained a valid factual foundation supporting the allegation by the director in the enforcement order that Red Hill Farm was constructing an animal waste holding lagoon."

██ Preliminarily, in reviewing a decision of the director, the EBR is limited to considering whether the director's action was unreasonable or unlawful, given the evidence presented at the *de novo* hearing; it may not substitute its judgment for that of the director as to factual determinations. *CECOS Internatl., Inc. v. Shank* (1992), 79 Ohio App.3d 1, 6, 606 N.E.2d 973, 977; see R.C. 3745.05. In contrast, an appellate court is charged with determining whether the EBR's decision concerning the reasonableness and lawfulness of the director's decision is supported by reliable, probative and substantial evidence and is in accordance with law. *Id.;* see R.C. 3745.06.

Under those parameters, we first address RHF"s second and third assignments of error, as together they raise the issue of whether the disposal systems being installed by RHF are statutorily excepted from the requirement of OEPA approval prior to installation.

Taken together, R.C. 6111.44, 6111.45 and Ohio Adm.Code 3745–31–02 prohibit the installation of any new disposal systems until the OEPA director has approved the plans for the systems and issued a permit to install.[2] R.C.

---

**2.** Specifically, these three provisions provide in pertinent part, as follows:
R.C. 6111.44:
"No * * * person shall * * * install sewerage or treatment works for sewage disposal * * * until the plans therefor have been submitted to and approved by the director of environmental protection."
R.C. 6111.45:
"No * * * person shall * * * as proprietor, agent, employee, lessee, or tenant, * * * install works for the treatment or disposal of any [industrial] waste until the plans for the disposal of such waste have been submitted to and approved by the director of environmental protection. As used in sections 6111.44 to 6111.46 of the Revised Code 'industrial waste' means a water-carried or a liquid waste resulting from any process of industry, manufacture, trade, or business, or development of any natural resource."
Ohio Adm.Code 3745–31–02(A):
"No person shall cause, permit, or allow the installation of a * * * new disposal system * * * without first obtaining a permit to install from the director. With regard to disposal systems as defined in division (G) of section 6111.01 of the Revised Code, application for a permit to install shall include plans for the disposal system, and issuance of a permit to install shall constitute approval of plans for the disposal system pursuant to sections 6111.44 and 6111.45 of the Revised Code."

6111.03(R) and 6111.44, however, provide an exception to the permit and approval requirement for "animal waste treatment or disposal works * * * *involving less than one thousand animal units* * * *." (Emphasis added.) Section 122.23, Title 40, C.F.R., provides that a single dairy cow equals 1.4 "animal units." Thus, seven hundred fourteen dairy cows constitute "one thousand animal units" for purposes of the exception.

In its second assignment of error, RHF argues that the EBR's refusal to apply the foregoing exception to RHF's disposal systems is unlawful because the EBR improperly looked to the future capacity of the farm in determining whether its disposal systems involved fewer than one thousand animal units. In support of its contentions, RHF relies heavily upon the EBR's findings concerning RHF's present plans for the farm: that RHF plans a herd of four hundred cattle for its farm, that RHF presently plans to build barns to accommodate only four hundred cows, and that the underground digester/storage system RHF is constructing is not oversized for a herd of four hundred dairy cattle if emptied only once per year, as RHF plans to do.

■ Without question, the EBR's decision is not a model of clarity. A great many of the board's "Findings of Fact" appear to be recitations of the competing evidence presented at the *de novo* hearing, rather than findings made by the board after weighing that evidence. Further, while several significant findings of fact are interspersed in the board's "Conclusions of Law," others directly contradict each other. However, contrary to RHF's contentions, the dispositive issue is not the number of cows RHF presently plans to place on the farm. Rather, the critical issue is whether RHF's total waste disposal system supports more than one thousand animal units.

■ In that regard, the EBR found that the area which RHF has excavated for animal barns is large enough to accommodate barns for up to thirty-six hundred cows; that RHF's statements regarding the intended size of its herd have varied widely, ranging from a low of fifty animals to a high of four thousand animals; that although RHF claims to have reduced the size of the herd it intends to place at the farm, it has not reduced the size of the facilities being constructed at the site in conformity with these claims; that RHF is also constructing a lagoon for the purpose of storing animal waste generated at the farm; and that RHF's underground digester/storage system has the ability to support up to four thousand one hundred ninety-six dairy cattle if its four tanks are emptied several times a year, as is the more conventional practice.

As the foregoing demonstrates, the EBR's findings on the critical issue unfortunately are contradictory. At one point, the EBR finds that RHF's four-tank underground digester/storage system, as RHF indicated it will use it, "is not

oversized" for four hundred cows, thus suggesting that the system will support only a herd that size. On the other hand, the EBR's finding that the digester/storage system will support over four thousand cows, coupled with the EBR's other findings regarding RHF's fluctuating reports of herd size, its sizeable excavations for animal barns, its constructing a lagoon for additional waste storage capacity and the absence of facility reductions corresponding to reported herd reductions, suggests that, despite the EBR's other findings, the EBR factually found that RHF's total waste disposal system will support more than four hundred cows.

Potentially, the EBR's finding that RHF was constructing an animal waste lagoon could resolve the contradiction in the EBR's factual findings. Specifically, if the evidence indicated that the lagoon would provide animal waste disposal capacity for an additional three hundred fifteen cows, then despite the board's findings regarding RHF's intended use of the digester/storage system, the total waste disposal capacity would support more than one thousand animal units. The record, however, does not reflect how many additional cows the lagoon will support. Thus, the record is not sufficient to override the contradictory findings on the critical issue under the exception.

Given the foregoing, some clarification of the EBR's order is necessary to determine whether that order is properly supported by its findings and this record. To that extent, RHF's second assignment of error is sustained.

 In reaching its determination, the EBR placed the burden of proof upon RHF. RHF's third assignment of error contends that the EBR erred in so doing. However, the party asserting a statutory exception is required to prove the facts warranting application of the exception. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 83, 526 N.E.2d 786, 789–790; *State ex rel. Schaefer v. Montgomery Cty. Bd. of Commrs.* (1967), 11 Ohio App.2d 132, 141, 40 O.O.2d 296, 301–302, 229 N.E.2d 88, 94–95. The EBR correctly concluded that RHF had the burden of proving that the exception to the permit requirement contained in R.C. 6111.03(R) and 6111.44 applied to its disposal systems.

Given the foregoing, RHF's third assignment of error is overruled.

 In its first assignment of error, RHF argues that the EBR erred in holding that the director had not exceeded his statutory authority both in ordering RHF to cease construction of its disposal systems until such time as it received a permit to install the systems from OEPA, as well as in requiring RHF to apply for such permits within ninety days.

R.C. 6111.03 enumerates the powers of the OEPA director for controlling water pollution. The director's authority to issue orders is contained in R.C. 6111.03(H), which provides as follows:

"The director of environmental protection may:

" * * *

"(H) Issue, modify, or revoke orders to prevent, control, or abate water pollution:

"(1) Prohibiting or abating discharges of sewage, industrial waste, or other wastes into the waters of the state;

"(2) Requiring the construction of new disposal systems or any parts thereof, or the modification, extension, or alteration of existing disposal systems or any parts thereof;

"(3) Prohibiting additional connections to or extensions of a sewerage system when such connections or extensions would result in an increase in the polluting properties of the effluent from such system when discharged into any waters of the state;

"(4) Requiring compliance with any standard or rule adopted under section 6111.041 or 6111.042 of the Revised Code, or term or condition of a permit."

The EBR concluded, as the director argues on appeal, that the order in question is authorized by R.C. 6111.03(H)(1), as the purpose of the order is to prevent the possible discharge of pollutants into the waters of the state.

Initially, the director's order does not mention preventing a discharge of pollutants into the waters of the state. Rather, the order refers only to RHF's failure to obtain permits to install its animal waste disposal systems. More important, however, the record contains no evidence which would support a finding that either of RHF's disposal systems threatens discharge of pollutants into the waters of the state. To the contrary, the evidence suggests that RHF is utilizing the very latest in environmental technology, and that neither the digester/storage system nor the waste holding lagoon is designed to allow direct discharge into the waters of the state.

 While any system designed to treat or store sewage or industrial waste necessarily poses some threat to the environment due to the possibility of an accident or equipment failure leading to a spill, the plain meaning of the phrase "prohibiting or abating discharges" indicates that R.C. 6111.03(H)(1) is intended to empower the director to address ongoing or threatened discharges of pollutants, rather than the less immediate threat inherent in any disposal system. The latter risk is addressed in R.C. 6111.44 and 6111.45, which require that such systems be approved by OEPA prior to installation. See R.C. 6111.44 and 6111.45.

Our conclusion does not leave the director powerless to enforce the approval and permit requirements of R.C. 6111.44, 6111.45 and Ohio Adm.Code 3745–31–02

where no threat of pollution discharge exists. On the contrary, R.C. 6111.03(K) and 6111.07 expressly authorize the director to bring suit to compel compliance with the provisions of R.C. Chapter 6111; those provisions include the availability of injunctive relief to prevent further construction until the necessary permit is obtained.

Given that the record contains no suggestion that a discharge of pollutants is foreseen in the near future, much less presently threatened, the EBR erred in upholding the director's dual orders. RHF's first assignment of error is sustained.

■ In its fourth assignment of error, RHF alleges that the EBR's conclusion that RHF is constructing an animal waste holding lagoon is not supported by reliable, probative and substantial evidence.

The director introduced two documents which tend to show that RHF was in the process of constructing an animal waste storage lagoon: (1) a topographic map which RHF had submitted to OEPA as part of an unrelated storm water discharge permit application on which RHF had indicated the location of a "proposed waste holding lagoon" at its dairy farm, and (2) a letter written by an OEPA official indicating that during an inspection of the RHF site on July 22, 1991, he observed that RHF was constructing what was either an animal waste holding lagoon or a runoff pond. In addition, the construction manager for the RHF dairy farm project admitted on cross-examination that the area indicated on the topographic map as the site of a "proposed waste holding lagoon" had been excavated and could be made to function as a waste holding lagoon with only minor modifications.

RHF argues, however, that the evidence that RHF no longer planned an animal waste holding lagoon for its dairy farm was overwhelming, and that the EBR should have so found. While several RHF employees testified at the *de novo* hearing that RHF no longer planned to utilize an animal waste holding lagoon at its dairy farm, the EBR was not required to accept that testimony. Rather, the EBR was free to weigh the competing evidence, taking into account its determinations concerning the credibility of the various witnesses, and to conclude as it did. See *Northeast Ohio Regional Sewer Dist. v. Shank* (1991), 58 Ohio St.3d 16, 25, 567 N.E.2d 993, 1001–1002. RHF's fourth assignment of error is overruled.

Having overruled RHF's third and fourth assignments of error, but having sustained its first and second assignments of error to the extent indicated, we reverse the decision of the EBR. While our disposition of the second assignment of error regarding the exception suggests that we remand the matter to the EBR to allow the EBR the opportunity to clarify its findings of fact, our disposition of

the first assignment of error concerning the director's authority to issue the order renders clarification unnecessary, as the order must be vacated.

Thus, we remand the matter to the EBR to vacate the director's order in accordance with our disposition of RHF's first assignment of error.

*Order reversed*
*and cause remanded.*

PETREE and DESHLER, JJ., concur.