OPINION
Appellant, Interstate Properties, appeals from the February 4, 1999 final order of the Environmental Review Appeals Commission ("ERAC") affirming the decision of appellee, the Director of the Ohio Environmental Protection Agency (the "Director" and "OEPA," respectively) to issue to appellant a certain water quality certificate pursuant to Section 401 of the Clean Water Act, Section 1341, Title 33, U.S. Code.
Appellant is an Ohio partnership seeking to develop a shopping mall on thirty-three acres of land in Summit County, Ohio. In so doing, appellant proposed to straighten approximately one thousand five hundred feet of a stream crossing the property and enclose the stream in a forty-eight inch culvert pipe.
Under Section 404 of the Clean Water Act (the "Act"), codified at Section 1344, Title 33, U.S. Code, persons seeking to discharge any dredge or fill materials into the waters of the nation must first obtain approval for such activities from the Army Corps of Engineers (the "Corps"). The Corps may authorize such activities in two separate ways: (1) with an individual permit, which extends only to a given project, based upon a site-specific review of the particular activities proposed there; or (2) with a general permit, commonly known as a "nationwide permit," which authorizes a certain category of activities that are substantially similar in nature and cause minimal individual and cumulative environmental impact. See Section 1344(e)(1), Title 33, U.S. Code; Section 323.2(g) and (h), Title 33, CFR A nationwide permit generally authorizes any party to engage in the activity described in the nationwide permit without seeking prior, project-specific authorization; however, if the proposed discharge activities do not fall within those activities described by the nationwide permit, the person must obtain an individual permit from the Corps. See Section 323.3(a), Title 33, C.F.R.; see, generally, Keating v. Federal Energy Regulatory Comm. (C.A.D.C. 1991), 927 F.2d 616, 619.
In addition, pursuant to Section 401 of the Act (codified at Section 1341, Title 33, U.S. Code) the Corps cannot issue either permit (a nationwide permit or an individual permit) without first obtaining certification from the state in which the activity is to take place that the proposed discharge will comply with federal and state clean water requirements. See, also, Section 330.4(c)(1), Title 33, CFR (state certification is required prior to issuance of a nationwide permit). Thus, if a state denies certification of the nationwide permit, all proposed discharges within that state must obtain individual state certifications (a "Section 401 Certification"), certifying that the proposed project meets the state's water quality standards. If, however, a state grants a blanket certification to a nationwide permit, those activities described in the nationwide permit may be conducted in the state without obtaining a separate Section 401 Certification. Finally, a state may (as Ohio did here) generally certify the nationwide permit but, in so doing, add "special conditions" limiting the applicability of a nationwide permit within the state. See Section 1341(d), Title 33, U.S. Code; Section 330.4(c)(2), Title 33, CFR In these states, persons seeking to conduct activities otherwise covered by the nationwide permit must also comply with the state's special conditions attached to the nationwide permit, and in some cases, must obtain an individual Section 401 Certificate from the state if such activities are excluded from the nationwide permit by the state certification. Thus, the applicability of any particular nationwide permit in any given state depends upon that state's certification to the relevant nationwide permit.
The nationwide permit relevant here, Nationwide Permit No. 26 ("NWP 26"), effective January 21, 1992 through January 21, 1997, authorized certain discharges into headwaters and isolated waters. On January 17, 1992, the director of the Ohio EPA ("OEPA") issued Ohio's general certification to NWP 26, specifically excluding from the coverage certain activities in the state of Ohio, including activities resulting in the channelization of streams greater than one thousand feet in length.
In October 1994, appellant was informed by representatives of the Corps that its proposed project fell within the general criteria of NWP 26. However, appellant was also informed that OEPA's one thousand foot channelization limitation to NWP 26 precluded automatic applicability of NWP 26 because appellant sought to enclose approximately one thousand five hundred feet of the stream in a culvert. As such, appellant was informed that appellant was required to obtain a Section 401 Certification from the OEPA certifying that the proposed activity satisfied Ohio's water quality requirements.
In November 1994, appellant filed its initial application with the OEPA seeking a Section 401 Certificate for its project. On November 5, 1997, after a myriad of procedural and other matters not relevant here, the Director of OEPA issued a Section 401 Certificate to appellant. In so doing, the Director authorized only the construction of a "non-degradation alternative" and specifically prohibited any enclosing of the stream in a culvert. In particular, the certificate provided as follows:
 The applicant shall be authorized to only construct the non-degradation alternative. This may include the construction of a bridge over the stream to access additional parking areas. No dredging, filling, or culverting of the stream or filling in wetlands shall be permitted. [Emphasis added.]
The certificate also included additional conditions, in particular, that steps be taken during construction to minimize bank erosion, that damage to "immediate environment of the project" by construction equipment be immediately repaired, that trees that have been removed be replaced with species possessing rapid growth characteristics, and that appellant obtain an OEPA approved stormwater pollution prevention plan prior to commencement of construction.
On December 3, 1997, appellant filed an appeal with ERAC. ERAC held a de novo hearing on the matter in June, 1998. On February 4, 1999, ERAC issued its findings of fact, conclusions of law and final order, affirming the Director's action and finding that the Director acted reasonably and lawfully in issuing the Section 401 Certificate. On March 3, 1999, appellant timely appealed, raising the following single assignment of error:
 The Environmental Review Appeals Commission erred in affirming the action of the Director of Environmental Protection in purportedly issuing the Section 401 Certification to Appellant, Interstate Properties.
In reviewing a decision of the Director of the OEPA, ERAC must affirm the decision unless ERAC finds that the action taken by the Director is unreasonable or unlawful. R.C. 3745.05;Red Hill Farm Trust v. Schregardus (1995), 102 Ohio App.3d 90,95. On an appeal to this court, we must affirm ERAC's order if, considering the entire record, it is supported by reliable, probative and substantial evidence and is in accordance with law. See R.C. 3745.06; see, generally, C.F./Water v. Schregardus (Oct. 28, 1999), Franklin App. No. 98AP-1481, unreported (1999 Opinions 4404); Johnson's Island Property Owners' Assn. v. Schregardus
(1995), 104 Ohio App.3d 563, 570.
In its single assignment of error, appellant raises four legal challenges to the validity of ERAC's order affirming the Director's issuance of the Section 401 Certification. Appellant contends that the certification was invalid because: (1) it did not authorize appellant to do anything that it could not have done absent the Section 401 Certification and imposed additional restrictions on appellant's property outside the boundaries of the stream; (2) it was vague, ambiguous, and subject to conflicting interpretations; (3) the Director retroactively applied certain provisions of OEPA's "anti-degradation" rule contained in Ohio Adm. Code 3745-1-05; and (4) a Section 401 Certification should never have been required in that OEPA's one thousand foot channelization restriction to NWP 26 was invalid because it was never adopted as an administrative rule as required under R.C. Chapter 119.
Appellee contends that the issues raised by appellant have been rendered moot because the version of the NWP 26 under which appellant sought certification expired on January 21, 1997. A modified NWP 26 was issued effective February 11, 1997. Under applicable federal regulations, appellant had one year from the expiration of NWP 26 to complete any project authorized under that nationwide permit. See Section 330.6(b), Title 33, CFR (activities under construction or under contract to commence construction in reliance upon a nationwide permit remain authorized provided the activity is completed within twelve months of the applicable nationwide permit's expiration, modification, or revocation). As noted in the testimony of Michael Gheen, Chief of the Huntington Regulatory Branch of the U.S. Army Corps of Engineers, at the hearing below, because appellant did not complete its project by January 21, 1998, appellant can no longer rely on the prior version of NWP 26 and must reapply with the Corps for authorization under current law. As such, appellee contends that "any decision by this Court in the instant appeal regarding the Director's issuance of Section 401 Certification pursuant to that [i.e. prior] Nationwide 26 will be historical and advisory" in nature as to any future action that the Director might take on a future application by appellant. (Appellee's brief at 32.) See, e.g., Drydock Coal Co. v. Ohio Div. of Reclamation
(1996), 115 Ohio App.3d 563, 566 (issue is still moot even though issue might resurface in a future permit application by appellant).
Appellant responds with two separate arguments. First, appellant contends that the one-year-time limit to complete projects authorized under a nationwide permit has not expired because the Corps extended the expiration of NWP 26 until September 1999. Second, appellant contends that even if the issues raised in this appeal are technically moot, they fall within an exception to the mootness doctrine as issues capable of repetition yet evading review. In particular, appellants argue that:
 * * * If this Court were to dismiss this appeal as "moot," Appellant would be free to apply again for permission to enclose the stream under the Nationwide Permit No. 26 which is currently in effect. In responding to such an application, Ohio EPA would likely either deny a Section 401 Certification or attach "special conditions" to the Certification which are identical to those as issue in this appeal.
 Before judicial review could be completed on Ohio EPA's future action, the current Nationwide Permit No. 26 would likely expire, and Ohio EPA would again be arguing to this (or another) Court that any review of the merits of its actions is moot. This cycle could then be repeated endlessly, without ever reaching the merits of Appellant's legal arguments regarding the unlawful features of Ohio EPA's Section 401 Certification. * * * [Appellant's Reply Brief at 14-15.]
We find neither of appellant's arguments persuasive.
First, the extensions referenced by appellant were not
made to the version of NWP 26 under which appellant originally sought Section 401 Certification. Rather, the extensions referenced by appellant were to the modified version of NWP 26, effective February 11, 1997, which replaced the NWP 26 relied upon by appellant here. See, generally, Final Notice of Issuance, Reissuance, and Modification of Nationwide Permits (Dec. 13, 1996), 61 F.R. 65874. The modified version of NWP 26 was originally scheduled to expire on February 11, 1999, but the Corps twice extended the expiration date of this version of NWP 26 to September 30, 1999 and to January 5, 2000. See 63 F.R. 55095, 55096 eff. Oct. 14, 1998 and 64 F.R. 48386, 48387 eff. Sept. 3, 1999, respectively. However, neither of these extensions applied to the original NWP 26 relied upon by appellant here. In fact, the Corps, in its December 13, 1996 announcement concerning the issuance of its modified NWP 26, specifically stated that activities commenced in reliance upon the previous NWP 26 would remain authorized only if the activity was completed prior to January 21, 1998. See 61 F.R. 65874, 65875 ("In those cases where the previously used nationwide permit is being reissued with modification [NWPs 6, 12, 14, 21, 26, 27, 32] * * * activities which commence [i.e., under construction, or are under contract to commence] in reliance upon the earlier NWP * * * will remain authorized provided the activity is completed prior to January 21, 1998"). (Emphasis added.) Thus, the one year limit to complete projects authorized by the NWP 26 under which appellant sought Section 401 Certification expired on January 21, 1998.
Second, while some of the issues raised in appellant's appeal are capable of repetition, they do not evade review. As recounted above, appellant's argument is premised upon the likelihood that the current (and future) version of NWP 26 would expire before this court could reach the merits of appellant's arguments regarding the unlawfulness of any similar action taken by the Director on a Section 401 Certification sought by appellant under the current (or future) version of NWP 26. However, as alluded to by Gheen at the hearing below, appellant's proposed project, the channelization of approximately one thousand five hundred feet of a stream, is no longer authorized under the current version of NWP 26, which contains a five hundred linear feet limitation. As stated by the Corps in its December 1996 announcement concerning the modified version of NWP 26, "no activity that adversely effects greater than 500 linear feet of the stream bed can be authorized under NWP 26." 61 F.R. 65874, 65894. As such, appellant could not proceed with its project under a nationwide permit but would be required to obtain an individual Corps permit and an individual state Section 401 Certification. Thus, even though some of the issues raised by appellant (in particular, OEPA's jurisdiction over a riparian corridor outside the banks of a stream and the alleged vagueness in any particular Section 401 Certification) could arise again in a future application, the alleged unlawful action by the Director as to a future Section 401 Certification would not again be rendered moot by the future expiration of NWP 26.
For the foregoing reasons, we find that the issues raised in appellant's appeal are moot. Appeal dismissed.
Appeal dismissed.
KENNEDY and BRYANT, JJ., concur.