DECISION
Appellant, Christopher Jones, in his capacity as Director of the Ohio Environmental Protection Agency ("OEPA") appeals from a decision of the Environmental Review Appeals Commission ("ERAC") reversing a prior determination of the OEPA and finding that appellee, Ashland Chemical Company, was not subject to application of Ohio Adm. Code 3745-21-07(G)(2) as interpreted by the OEPA and applied to certain Ashland Chemical Company facilities.
The facts in the present matter are largely undisputed. Appellee Ashland Chemical Company ("Ashland") is a manufacturer and distributor of chemical products. As part of its network of distribution operations, Ashland operates a small distribution facility located at 200 Darrow Road, Akron, Ohio. Ashland uses the Darrow Road facility to store chemicals received in bulk quantities, and ultimately transfer various chemical products from large storage tanks and tank cars into smaller containers for shipping to Ashland's customers. The parties have stipulated that no manufacturing or chemical reactions occur at the Darrow Road facility. The three specific container-filling lines in question at the Darrow Road facility fill numerous containers every day for distribution. Each filling line is capable of blending chemicals and adding different chemicals to the same smaller container to meet customer specifications.
Most of the chemicals transferred into smaller containers for distribution at the Darrow Road facility are liquids. Many of the compounds fall into certain regulated categories and definitions as "organic compounds" (Ohio Adm. Code3745-21-01[B][4]), "organic materials" (Ohio Adm. Code3745-21-01[C][4]), and "liquid organic materials" (Ohio Adm. Code3745-21-01[C][3]). Some of the organic materials in question are comprised of "photochemically reactive materials" (Ohio Adm. Code3745-21-01[C][5]), and are particularly subject to close regulation because, in reaction with other atmospheric compounds, they can combine to create ozone, a principal component of smog.
Pursuant to Ohio Adm. Code 3745-35-02(A) and R.C.3704.05(A), an entity operating a potential source of air pollution must obtain a Permit to Operate ("PTO") through application to the OEPA. In the 1997 PTO's issued for Ashland's Darrow Road container-filling lines, among other pertinent regulations, the OEPA identified Ohio Adm. Code 3745-21-07(G)(2) as applicable to the Darrow Road facility. This rule imposes a cap on hourly and daily emissions of organic materials from each container-filling line, and a number of associated record keeping and reporting obligations.
Ashland filed an appeal to ERAC disputing the inclusion of Ohio Adm. Code 3745-21-07(G)(2) in the PTOs as applicable to the container-filling lines. Following a hearing de novo, ERAC issued its findings of fact, conclusions of law, and final order determining that OEPA had unlawfully interpreted the applicability of Ohio Adm. Code 3745-21-07(G)(2), and ordering that mention of this rule be removed from the Darrow Road PTOs. Appellant has timely appealed ERAC's determination and brings the following assignment of error:
 The Environmental Review Appeals Commission's ruling that the Director unlawfully interpreted the applicability of Ohio Adm. Code Rule 3745-21-07(G)(2) is not in accordance with law and is not supported by reliable, probative and substantial evidence.
R.C. 3745.06 provides that, upon an appeal to this court from ERAC, "[t]he court shall affirm the order complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." In applying this standard, this court has stated as follows:
 [I]n reviewing a decision of Director, [ERAC] is limited to considering whether the director's action was unreasonable or unlawful, given the evidence presented at the de novo hearing. * * * In contrast, the appellate court is charged with determining whether [ERAC's] decision concerning the reasonableness and lawfulness of Director's decision is supported by reliable, probative and substantial evidence and is in accordance with law.
Red Hill Farm Trust v. Schregardus (1995), 102 Ohio App.3d 90, 95.
The present case is one of legal interpretation of the language of the applicable regulations, and the parties have largely stipulated to the material facts.[1] Because the pertinent facts in the present matter are not disputed, the case turns upon interpretation and application of the regulation at issue, Ohio Adm. Code 3745-21-07(G)(2). This rule is in the context of Ohio Adm. Code 3745-21-07, which generally regulates the emission of organic materials from stationary sources, such as storage facilities and manufacturing plants. Within its broad goal of regulating emissions of organic materials, Ohio Adm. Code3745-21-07 has specific subsections addressing both various types of compounds and various operations requiring such compounds. Some subsections provide a general aspirational mandate: "Except as otherwise provided in this rule, all new stationary emission sources of photochemically reactive materials shall minimize such emissions by use of the latest available control techniques and operating practices in accordance with best current technology." Ohio Adm. Code 3745-21-07(B). Other subsections address specific applications for certain organic chemicals: Ohio Adm. Code3745-21-07(D), for example, which controls storage of volatile photochemically reactive materials, and Ohio Adm. Code3745-21-07(E), which addresses loading facilities for volatile photochemically reactive materials being transferred into tank trucks or railroad tank cars, and requires a vapor collection and disposal system. Ohio Adm. Code 3745-21-07(E)(1).
The subsection at issue in the present case, Ohio Adm. Code 3745-21-07(G), provides as follows:
(G) Operations using liquid organic material:
 (1) A person shall not discharge more than fifteen pounds of organic materials into the atmosphere in any one day, nor more than three pounds in any one hour, from any article, machine, equipment, or other contrivance in which any liquid organic material or substance containing liquid organic material comes into contact with flame or is baked, heat-cured, or heat-polymerized, in the presence of oxygen, unless said discharge has been reduced by at least eighty-five per cent.
 (2) A person shall not discharge more than forty pounds of organic material into the atmosphere in any one day, nor more than eight pounds in any one hour, from any article, machine, equipment, or other contrivance used under conditions other than described in paragraph (G)(1) of this rule for employing, applying, evaporating or drying any photochemically reactive material, or substance containing such photochemically reactive material, unless said discharge has been reduced by at least eighty-five per cent.
The parties offer differing interpretations of whether Ashland's container-filling lines are "operations using liquid organic material," under the general heading of Ohio Adm. Code3745-21-07(G), and whether the container-filling lines constitute operations "employing, applying, evaporating or drying any photochemically reactive material" under Ohio Adm. Code3745-21-07(G)(2). The OEPA's original determination was that the term "employing" should be taken to mean "using" in its broadest sense, and that the Darrow Road container-filling lines are "used" to transfer chemicals from storage tanks to small, portable containers which are then shipped to customers. ERAC disagreed, and applied the legal maxim noscitur a sociis ("one is known by his companions") to find that the term "employing" should take its meaning from the words around it. Looking then to the surrounding terms "applying, evaporating or drying," ERAC concluded that "employing" should not be given the broader sense of "using" invoked by OEPA, but should be given a more limited sense: "Thus, according to the process of statutory construction and the use of the foregoing maxims, `employing' must not be construed to its widest extent and must take its meaning from the terms with which it is associated in paragraph (G)(2); that is `applying, evaporating or drying.' It cannot be given the general meaning `to use' and applied out of context of the operations described in paragraph (G)(2)." (ERAC Order, pg. 12.) ERAC thus concluded that "employing" as invoked in Ohio Adm. Code 3745-21-07(G)(2) would take a more limited meaning from the terms around it, and not be applicable to the container-filling operation at the Darrow Road facility.
Addressing the topic of statutory interpretation, the Ohio Supreme Court has stated as follows:
 It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law. Statutes which relate to the same subject are in pari materia. Although enacted at different times and making no reference to each other, they should be read together to ascertain and effectuate the legislative intent.
State v. Moaning (1996), 76 Ohio St.3d 126, 128 (Citations omitted.) Examining the various provisions pertaining to regulation of emissions of organic compounds found in Ohio Adm. Code 3745-21-07, as well as the specific language of Ohio Adm. Code 3745-21-07(G)(2), we find that the narrow interpretation adopted by ERAC in the present case is unlawful.
The Ohio Supreme Court addressed the legal maximnoscitur a sociis in State ex rel. Rear Door Book Store v. TenthDist. Court of Appeals (1992), 63 Ohio St.3d 354, in which the statutory phrase "lewdness, assignation, or prostitution" was interpreted as giving independent meaning to the more general term "lewdness," in addition to and apart from the more specific conduct described by "assignation" and "prostitution:"
 Noscitur a sociis is a rule of construction that states: where two or more words of analogous meaning are employed together in a statute, they are to be read in their cognate sense to express the same meaning. We perceive two flaws in this line of reasoning. Initially, we have already determined that the terms "lewdness" and "assignation" have meanings of their own separate and apart from the meaning of prostitution. The rule is thereby not applicable since the words used together are not of an analogous meaning. Secondly, the statute is written in the disjunctive by inserting the term "or."
 We again refer to Webster where "disjunctive" is defined as: "* * * pleading or marked by mutually exclusive alternatives joined by `or' * * *." Webster's, supra, at 651. The Ohio Supreme Court has defined the word "or" as: "* * * a function word indicating an alternative between different or unlike things. * * *" Pizza v. Sunset Fireworks Co. (1986), 25 Ohio St.3d 1, at 4-5, 25 OBR 1, at 4, 494 N.E.2d 1115, at 1118. It must be presumed that the legislature was aware of the rules of grammar when R.C. 3767.01 was promulgated. By using the word "or," the legislature gave a separate and distinct identity to each of the articulated terms. A violation * * * can be sustained by finding an abridgement of any one of the three mutually exclusive terms.
Id. at 361-62 (adopting text of appellate court decision.)
Similarly, in the present case, application of noscitura sociis to the disjunctive phrase in question results in the word "employing" being given no weight, in violation of the fundamental postulate of statutory interpretation that rules and statutes be read so as to give effect to every word. Clearly, "applying, evaporating and drying" have meanings which differ from each other and from the broader meaning of "employing." Since the words are not analogous and must each be given, in the words of the Supreme Court in Rear Door, a "distinct and separate identity," we find that noscitur a sociis is inapplicable to the present case, and ERAC's reliance upon the maxim was in error.
R.C. 1.42, covering statutory interpretation, states that "words and phrases shall be read in context and construed according to the rules of grammar and common usage." Thus, unless a word has a specialized meaning, it should be given its plain and ordinary meaning. Delli Bovi v. Pacific Indemnity Company (1999),85 Ohio St.3d 343. The term "employing" is not defined for purposes of Ohio Adm. Code 3745-21-07. It will then be given its common, every day dictionary definition, for example, that proposed by OEPA: "to make use of; use * * * to put or bring into action or service; employ for or apply to a given purpose." Webster's New World College Dictionary (2 Ed. 1972). At the Darrow Road container-filling lines, organic materials, including photochemically reactive materials governed by Ohio Adm. Code3745-21-07(G)(2), are pumped into smaller containers for distribution to customers. We conclude that, given the broader definition we find applicable for "employing," these organic materials are "put into action or service, or applied for a given purpose." Pursuant to the dictionary definition of "employing," we conclude that Ohio Adm. Code 3745-21-07(G)(2) is applicable to Ashland's Darrow Road container-filling operations.
Furthermore, the application of Ohio Adm. Code 3745-21-07(G)(2) to the container-filling operation is consistent with the overall regulatory scheme. Although the transfer of volatile photochemically reactive materials is governed, as set forth above, by other subsections such as Ohio Adm. Code 3745-21-07(D) and (E), the OEPA's interpretation of the regulation logically fills a gap in regulatory coverage. Subsection (D) governs only containers over a certain size threshold of 65,000 gallons, and only operations using volatile photochemically reactive materials. Subsection (E) applies specifically to loading volatile photochemically reactive materials into tank trucks, trailers and railroad tank cars. Subsection (G) thus acts as a catch-all provision governing materials and operations not addressed in subsections (D) or (E). This insures that all operations using photochemically reactive materials are covered. While subsections (D) and (E) regulate specific operations, and require appropriate emission control technology such as vapor collection systems for the specific operations, subsection (G)(2), covering a broader range of operations, does not require specific emissions control technology but does impose limitations on total emissions. Far from producing an absurd result, as argued by Ashland, we find that the OEPA's interpretation application of Ohio Adm. Code 3745-21-07(G)(2) produces a coherent and logical regulatory scheme governing organic compounds, including volatile and photochemically reactive materials.
We therefore find, on the basis of both our interpretation of the specific regulatory language of Ohio Adm. Code 3745-21-07(G)(2), and the general regulatory context of Ohio Adm. Code 3745-21-07, that the decision of ERAC overruling the OEPA's interpretation and application of this regulation is not in accordance with law. Appellant's single assignment of error is accordingly sustained. ERAC's decision is therefore vacated, and the matter is remanded to ERAC to issue a new order reinstating the OEPA's prior determination.
Judgment reversed and cause remanded.
 ______________________ DESHLER, J.
LAZARUS and KENNEDY, JJ., concur.
[1] Appellant does contest ERAC's finding of fact #8, that emissions from the container-filling lines are captured by a vapor control system. Testimony at the hearing, including that of Ashland's own witness, appears to indicate that this is inaccurate, and there is in fact no vapor collection system on the lines in question at the Darrow Road site. The accuracy of this fact finding by ERAC does not materially influence the outcome of our decision and will not be addressed.