OPINION
Appellant, City of Norton, appeals the March 23, 2000 findings of fact, conclusions of law and final order of the Environmental Review Appeals Commission ("ERAC") affirming the decision of appellee Summit County General Health District ("SCGHD") to grant annual licenses, starting in 1997, to appellee Summit CD Disposal, Inc., to operate a construction and demolition debris facility within the boundaries of appellant, City of Norton.[1] For the following reasons, we affirm.
This case involves the historical and present use of twenty-eight acres of land located on Wadsworth Road in the City of Norton, Summit County, Ohio. Since 1996, Summit CD Disposal, Inc., an Ohio corporation, has used the property as a construction and demolition debris facility,i.e., a landfill for the disposal of materials resulting from the alteration, construction, destruction, rehabilitation or repair of man-made structures such as houses, buildings, industrial or commercial facilities and roadways. Significantly, a portion of the property at issue in this case is located within a one-hundred-year flood plain.
In 1990, the Ohio General Assembly passed R.C. Chapter 3714. comprehensive legislation designed to regulate construction and demolition debris facilities. Pursuant to the general provisions of this legislation, no person shall establish, modify, operate, or maintain a construction and demolition debris facility without a license issued by the board of health of the health district in which the facility is located or, where appropriate, from the director of the Ohio Environmental Protection Agency, which license must be renewed every year. R.C. 3714.06(A) and (B). Furthermore and particularly relevant here, R.C. 3714.03 prohibits the issuance of any license to establish or operate a facility, if any portion of it is located within the boundaries of a one-hundred-year flood plain. However, pursuant to R.C. 3714.06(C), construction and demolition debris facilities "in operation or under construction" on July 24, 1990, the effective date of R.C. Chapter 3714., are exempted from the general one-hundred-year flood plain prohibition. Thus, the property at issue in this case would not be entitled to a license under R.C. Chapter 3714. unless it was "in operation" on July 24, 1990.
Finding the facility at issue in this case satisfied the "in operation" requirement of R.C. 3714.06(C) (the so-called "grandfathering provision") and that the facility otherwise complied with the other requirements of R.C. Chapter 3714., the SCGHD granted, on September 23, 1997, a license to operate the facility to Summit CD Disposal, Inc., and granted annual renewals thereafter.
Appellant appealed the issuance of all such licenses to ERAC, which consolidated the appeals and held a de novo hearing on April 12 through 16, 1999. In its findings of fact, conclusions of law and final order issued March 23, 2000, ERAC affirmed the issuance of the initial license to Summit CD Disposal, Inc., in 1997, and the annual renewal licenses issued in 1998, 1999, and 2000. In so doing, ERAC rejected appellant's contention that the facility was not entitled to the grandfather exception contained in R.C. 3714.06(C) because it was not in operation or construction on July 24, 1990. Specifically, ERAC found that those individuals who had actual access to the property at issue testified consistently that the location had been used for the disposal of construction and demolition debris for a number of years prior to the operative July 24, 1990 date and continuing up to the present day.
Appellant timely appealed to this court, raising the following three assignments of error:
 FIRST ASSIGNMENT OF ERROR The Environmental Appeal Review Commission erred in affording Summit CD Disposal, Inc., the benefit of the grandfather provision of Section 3714.06(C) of the Ohio Revised Code.
 SECOND ASSIGNMENT OF ERROR The Environmental Review Appeals Commission erred in concluding that the action of the Summit County Health Commission in issuing the licence [sic] was reasonable and lawful where the Summit County Health Commission did not investigate or consider relevant facts.
 THIRD ASSIGNMENT OF ERROR The Environmental Review Appeals Commission erred in deferring to the Summit County Health Commissioner's interpretation of the grandfather provision in Section 3714.06(C) of the Ohio Revised Code and regulations promulgated thereunder, where the Summit County health Commission did not interpret the provision in accordance with law or subsequently changed its interpretation.
In an appeal from the issuance of a license to install and operate a construction and demolition debris facility pursuant to R.C. Chapter 3714., ERAC must affirm the action of the local board of health if it finds, based upon the evidence presented at the de novo hearing, that the issuance of the license was lawful and reasonable. R.C. 3745.05; see, generally, Johnson's Island Property Owner's Assn. v. Schregardus
(1995), 104 Ohio App.3d 563; C.F./Water v. Danis Clarkco Landfill Co.
(Oct. 28, 1999), Franklin App. No. 98AP-1481, unreported. In so doing, ERAC does not stand in the place of the local board and may not substitute its judgment for that of the board as to factual determinations. CECOS Internatl., Inc. v. Shank (1992), 79 Ohio App.3d 1,6; Red Hill Farm Trust v. Schregardus (1995), 102 Ohio App.3d 90, 95. Thus, the relevant inquiry for ERAC in this case was not whether it would have granted the license in the first instance but, rather, whether, based upon the evidence presented at the hearing, the decision to grant the license by the SCGHD was unreasonable or unlawful.
On appeal to this court and based on consideration of the entire record, we must affirm if ERAC's decision is supported by reliable, probative and substantial evidence and is in accordance with law. See R.C. 3745.06.
In its first assignment of error, appellant contends that the grandfathering provisions of R.C. 3714.06(C) do not inure to the benefit of Summit CD Disposal, Inc., because it (CD Disposal, Inc.) has no relationship with the person who owned or operated the landfill on July 24, 1990. In particular, appellant contends that the grandfathering provision applies only to owners or operators who owned or operated the facility on the triggering date (i.e., July 24, 1990) or at most, to successors-in-interest of such persons.
Here, Summit CD Disposal, Inc., did not own or operate the landfill in July 1990. Rather, Summit CD Disposal, Inc., which was first created in 1996, began leasing the land from its current owner, Richard Eslich, in December 1996. Mr. Eslich had purchased the property in October 1996 from Mr. Paul Burkhart, who was the owner and operator of the facility in 1990 and who had owned the property from the early 1970s. Thus, according to appellant, CD Disposal, Inc., being neither the owner nor operator of the property on July 24, 1990, and having no successor-in-interest relationship to such persons, may not take advantage of the grandfathering provision of R.C. 3714.06(C). We disagree.
As in any case of statutory construction, the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute. Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342, 349
(citing Featzka v. Millcraft Paper [1980], 62 Ohio St.2d 245). In so doing, the court must first look to the plain language of the statute itself to determine the legislative intent. State ex rel. Burrows v.Indus. Comm. (1997), 78 Ohio St.3d 78, 81; In re Collier (1993),85 Ohio App.3d 232, 237. However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction to determine legislative intent. State v. Smith (1996), 108 Ohio App.3d 663, 667;Brooks, supra. Ambiguity in a statute exists if its language is susceptible to more than one reasonable interpretation. See, e.g., Stateex rel. Toledo Edison Co. v. Clyde (1996), 76 Ohio St.3d 508, 513.
Here, the relevant provisions of R.C. 3714.06(C) provide as follows:
 The owner or operator of a construction and demolition debris facility that is in operation or under construction on the effective date of this section [July 24, 1990] shall, within six months after the effective date of the rules adopted under section 3714.02 of the Revised Code [9/30/96], submit to the board of the health district in which the facility is located or under construction an application for a construction and demolition debris facility installation and operation license and accompanying plans, specifications, and information regarding the facility and its method of operation. * * * The board or the director, as appropriate, shall issue a license for such an existing facility within ninety days after receiving a complete application therefore and accompanying plans, specifications, and information if the board or the director finds that the facility complies with the rules adopted under section 3714.02 of the Revised Code. When issuing a license under this division for an existing facility or a license to expand any existing facility that was initially licensed under this division onto contiguous land owned by the owner or operator of the existing facility on the date on which the application for a license for the facility was submitted under this division, neither the board nor the director shall consider whether the existing facility complies with the standards set forth in divisions (A) [prohibiting the siting of facilities within one-hundred-year flood plain] and (B) of section 3714.03 of the Revised Code. [Emphasis added.]
Nothing in the language of the statute specifically states that the owner or operator applying for the license must be the same owner or operator of the facility on July 24, 1990. Rather, the first sentence of division (C) identifies who must apply for the license (i.e., the owner or operator of the facility), and states that the facility must have been in operation or under construction on July 24, 1990, and places a time limit on when the application must be submitted (i.e., within six months after the effective date of the applicable rules). Significantly, the operative or "grandfathering" language of the statute makes no reference to the owner or operator of the facility but merely states that "[w]hen issuing a license under this division for an existing facility * * * neither the board nor the director shall consider whether the existingfacility complies with [the one-hundred-year flood prohibition]." A "facility" is defined as "any site, location, tract of land, installation, or building used for the disposal of construction and demolition debris." R.C. 3714.01(E). Simply put, we find the unambiguous language of R.C. 3714.06(C) does not require that the licensee of the facility need be the owner or operator of the facility in July 1990 or the successor-in-interest thereto.
Moreover, the plain language of the statute as a whole counsels against the interpretation advanced by appellant herein. R.C. 3714.06(B) specifically recognizes that ownership of construction and demolition debris facilities can change and, as such, specifically allows for the transfer of the license as appropriate. Nothing in this provision suggests that ownership transfers of existing facilities (either before or after initial licensing) otherwise effects the grandfather status of such a facility. Further, the provisions of R.C. 3714.06(C) authorizing the expansion of facilities onto contiguous land "owned by the owner or operator of the existing facility on the date on which the application for a license for the facility was submitted" indicates that the general assembly knew how to make specific ownership trigger dates when intended. Clearly, there is no similar language regarding a requirement that only the owner or operator (or successor-in-interest) of the property in July 1990 may qualify for the grandfather status.
Finally, the administrative regulations adopted by the Ohio EPA pursuant to R.C. Chapter 3714. do not support appellant's interpretation. The relevant provision, Ohio Adm. Code 3745-400-06(A), states that "[p]aragraph (B) [the prohibition of facilities within a one-hundred-year flood plain] of this rule does not apply to a facility operating or underconstruction on July 24, 1990." (Emphasis added.) Nothing in this language suggests that the grandfathering provision applies only to facilities still owned or operated by the entity who owned or operated it in 1990. As such, the regulation provides compelling authority that no such requirement exists. See R.C. 1.49(F) (administrative construction of statute is one factor to be considered when interpreting an ambiguous statute); see, e.g., Lorain City Bd. of Edn. v. State Emp. Relations Bd.
(1988), 40 Ohio St.3d 257, 260; Fraternal Order of Police, Ohio LaborCouncil, Inc. v. Hubbard Twp. Trustees (1990), 68 Ohio App.3d 843, 848.
For the foregoing reasons, we find that ERAC did not err in failing to rule that Summit DC Disposal, Inc., was ineligible for the grandfathering provision because it was not the owner or operator of the facility in July 1990, or a successor-in-interest to such entity. Appellant's first assignment of error is not well-taken.
In its second assignment of error, appellant contends that the conclusion by ERAC, that it was reasonable for the SCGHD to conclude that a facility was in operation on July 24, 1990, was not supported by reliable, probative, and substantial evidence. In particular, appellant contends that the evidence merely indicates that Paul Burkhart, the owner of the property from the early 1970s to 1996, did no more than accept clean fill at the property in order to bring it up to grade and that such activities took place before 1981, and after 1990. In so arguing, appellant contends that the information relied upon by the SCGHD in making its determination failed to address the condition and use of the property on July 24, 1990. We find, however, that ERAC's decision to affirm the action of the local board of health was supported by reliable, probative, and substantial evidence.
First, we note that appellant's challenge to the evidentiary basis of ERAC's decision is principally based upon the mistaken assumption that ERAC's review is limited to the information specifically relied upon by the local board of health in making its decision to grant grandfather status. As noted above, ERAC must consider whether the action of the local board of health was unreasonable or unlawful given the evidence presented at the de novo hearing. Thus, in making this determination, ERAC is not limited to the specific evidence relied upon by the local board, but must consider all relevant evidence presented during the de novo
hearing. See Northeast Ohio Regional Sewer Dist. v. Shank (1991),58 Ohio St.3d 16, paragraph two of the syllabus. ("[I]n a hearing denovo conducted pursuant to R.C. 3745.05, the Environmental Board of Review [now, ERAC] is not limited to the evidence available before a rule was promulgated, but may consider post-promulgated evidence.")
Here, there was reliable, probative, and substantial evidence presented at the de novo hearing before ERAC to support a determination that a construction and demolition debris facility was in operation during the operative period, July 24, 1990. Paul Burkhart, the owner of the property from the early 1970s to 1996, testified generally that he received construction and demolition debris at the property throughout his ownership. Burkhart further testified that such dumping was "heavily sporadic," with someone coming onto the property with debris at least once a week.
Likewise, Richard Eslich, the present owner of the property and CEO of Eslich Wrecking Co., testified that his business disposed of construction and demolition debris at the property at various times throughout the 1980s and 1990s. Eslich further testified as to several demolition projects conducted by his business during the operative period (July 1990) and their use of the subject property. Specifically, Eslich testified that, on May 10, 1990, Eslich Wrecking was awarded a contract to demolish Goodyear Tire and Rubber Plant 5 located in Akron, Ohio, with work to start on May 15, 1990, and be completed by December 1, 1990. Eslich testified that some of the debris from the demolition of Plant 5 went to the subject property and identified invoices dated in September and October 1990 indicating respectively that seventy percent and eighty-five percent of the demolition work had been completed. Similarly, Eslich testified that, on May 16, 1990, Eslich Wrecking was awarded a contract to demolish a PPG Industries plant in Barberton, Ohio, of which some of the debris went to the property in question. On June 27, 1990, Eslich Wrecking billed PPG over $12,000 for the work done on this project. Finally, Eslich identified a July 26, 1990 proposal for demolition work at another Goodyear Tire plant, which contract was awarded to Eslich Wrecking on August 27, 1990. Eslich explained that, at the time he made the proposal, he would have made his bid knowing where the debris from the project would be placed and that the debris from this project went to the property.
Eslich's testimony as to the use of the facility for construction and demolition debris in the summer of 1990, was corroborated by Walter Jakubiak, a heavy equipment operator for Eslich Wrecking in 1990. Jakubiak testified that he worked on the Goodyear Plant 5 demolition, that the work began on the project shortly after the award of the contract, and that some of the demolition debris (primarily the wood and plaster) was sent to the property.
Appellant contends that Eslich's testimony regarding the date of the Goodyear Plant 5 project is unreliable, in that no employee timesheet shows work on the project until 1991. Richard Eslich testified, however, that, until he hired his son and recent college graduate in the fall of 1991, the records of Eslich Wrecking were not completely or accurately maintained. Significantly, there appears to be no records of any employee timesheets for the relevant period. Moreover, appellant's contention goes to the weight and credibility of the testimony regarding the demolition of Goodyear Plant 5, a matter falling squarely within the discretion of ERAC.
Likewise, appellant relies heavily on a series of AMATS and United States Department of Agriculture aerial photographs, which appellant contends fails to show a construction and demolition debris facility in operation on July 24, 1990. This court's review of these photographs (including those taken in June 1990 and July 1991, the two nearest the operative date) does not, however, preclude a finding that the facility was in operation on July 24, 1990.
Thus, while the evidence presented at the hearing was not uncontroverted, we find that there was reliable, probative, and substantial evidence to support a finding that the facility was in operation on July 24, 1990. Appellant's second assignment of error is not well-taken.
In appellant's third assignment of error, appellant contends that ERAC erred in affirming the determination of the SCGHD because SCGHD's initial interpretation of the grandfathering clause was erroneous and had changed since the original license approval. In so arguing, appellant relies on the testimony of Robert Hasenyager, the SCGHD's employee who conducted the review of Summit CD Disposal, Inc.'s application and who recommended that the license be granted. In particular, appellant highlights Hasenyager's testimony indicating that he originally interpreted the grandfathering provision to apply to any facility that had received construction and demolition debris at any time before July 24, 1990. Hasenyager further testified that his interpretation of the grandfathering provision had changed in the past several years to require that the facility had accepted debris on or around the period of July 24, 1990, in addition to what may have been dumped before. Appellant contends that, given SCGHD's evolving interpretation of the grandfather provision, its evaluation of Summit CD Disposal, Inc.'s application was inherently flawed. We find, however, no reversible error in this regard.
Hasenyager testified that his opinion as to whether the facility was entitled to grandfather status did not change under the more restrictive interpretation of the grandfathering provision presently applied. As such, Hasenyager's changed interpretation of the grandfather provision had no bearing on the validity of SCGHD's determination that the facility was entitled to grandfather status. SCGHD defended its action before ERAC based upon the correct interpretation of the grandfather clause, which requires a showing that the facility was accepting construction and demolition debris in the normal course of operation in the period around July 24, 1990. ERAC subsequently affirmed SCGHD's action applying this proper legal standard, and this court has found that there was reliable, probative, and substantial evidence to support such a determination. As such, appellant has shown no prejudice in this regard, and its third assignment of error is not well-taken.
For the foregoing reasons, appellant's three assignments of error are overruled, and the order of the Environmental Review Appeals Commission is affirmed.
Order affirmed.
BOWMAN and KENNEDY, JJ., concur.
[1] Appellant's appeal challenging the validity of the Summit County General Health District's issuance of the initial license in 1997, and the 1998, 1999, and 2000 annual renewals thereof, are technically moot since all such annual licenses have expired at this time. Presumably, Summit CD Disposal, Inc., is presently operating under a renewal license for the year 2001, a license not included in appellant's appeal to ERAC. However, given Summit County General Health District's demonstrated intent to grant annual renewals to Summit CD Disposal, Inc., for its facility, we address the issues raised herein as falling within the exception to the mootness doctrine for issues capable of repetition yet evading review.